DANIEL M. HOFFMAN *v.* MAYOR AND CITY COUN-
CIL OF BALTIMORE, ET AL.

[No. 59, October Term, 1946.]

*Decided February 6, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, GRASON, HENDERSON and MARKELL, JJ.

*Wilson K. Barnes,* with whom were *Semmes, Bowen & Semmes, Ambler H. Moss* and *Carman, Anderson & Barnes* on the brief, for the appellant.

*Paul F. Due,* with whom were *Simon E. Sobeloff, City Solicitor, Max R. Israelson, Assistant City Solicitor,* and *Herbert L. Grimes* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

The petitioner (appellant) in this case filed with the Buildings Engineer an application to erect a gasoline filling station at the southwest corner of Edmondson Avenue and Swann Avenue, in the City of Baltimore, which was denied by the Buildings Engineer and referred by him to the Board of Zoning Appeals.

Par. 34-A, Ordinance 1247. After notice was given, as required by the ordinance, a public hearing was held by the Board on April 16, 1946, and on April 20, the Board denied the application for the permit. The applicant filed, in the Baltimore City Court, on April 29, 1946, a petition and appeal, which was answered by the City. A petition to intervene was filed by Martha E. Wells, which was permitted, and the answer of the City to the petition of the applicant was adopted by her. The case was heard by the lower court on the record made before the Board of Zoning Appeals, with the exception that some

exhibits were admitted in evidence in the trial of the case in the Baltimore City Court. That court, by an order dated June 17, 1946, sustained the resolution of the Board of Zoning Appeals dated the 20th day of April, 1946, and from that order this appeal is prosecuted.

At the outset it may be observed that the design of the proposed filling station is of a pattern generally seen in operation in cities, towns and country in this state, and no specific complaint is made to the design of the station, pumps, lighting, or any other features of the proposed station.

It is conceded that the south side of the 4600 block of Edmondson Avenue, extending back to the rear lines of the properties fronting thereon, are in a First Commercial Use District. The block on the south side of Edmondson Avenue, east of Swann Avenue, is in a Residential Use District. Practically all the north side of the 4600 block of Edmondson Avenue is used for commercial purposes. On the south side it is used for residential purposes.

The proposed filling station would displace two residences, one of which appellant intends to move and face on Swann Avenue. Next to these two houses is a residence, a first floor front room of which is used as a barber shop. At the southeast corner formed by the intersection of Edmondson Avenue and Old Frederick Road is a residence owned by Mr. Ring, and in this residence, on the first floor, he conducts a drug store. He has been permitted by the Zoning Board to erect a pole, at the property line, on which is a neon sign. With the exception of the drug store and the barber shop, this entire block is residential and has been residential for years. It was, however, in 1931, zoned First Commercial Use, but the people along this block apparently did not know of this until recently, thinking that it was zoned Residential.

In the general neighborhood of this proposed filling station, although over 300 feet therefrom, is a Presbyterian Church and a public school to which is connected

a large playground. The school and playground are to the north of Edmondson Avenue. On the south side of that avenue, about a block away, is a public park, known as Upton's Park, consisting of 33 acres, and immediately west thereof is St. Bartholomew's Church. About 1,000 feet away is the Aged Episcopal Women's Home, which is south of the location of the proposed filling station, and St. William's Church is about three blocks west, on Edmondson Avenue, on the north side.

Edmondson Avenue is a heavily travelled east and west artery and this traffic is augmented by people going to and from the churches, the school, the home, and the residences in the general neighborhood. The industrial use to which the north side of this block has been put, materially impedes and more or less obstructs the use of the north side of that block for pedestrian traffic. The south side of that block is not impeded and is unobstructed by commercial development for pedestrian traffic.

The appellant, in his petition filed in the lower court, recites:

1. That there is a filling station in the 4400 block of Edmondson Avenue, on the north side thereof, 700 feet east of Swann avenue, and approximately 850 feet from the site of the proposed filling station, with three 5,000-gallon storage tanks;

2. That there is a filling station located on property known as 4550 Edmondson Avenue, which is the northeast corner of Edmondson Avenue and Swann Avenue, approximately 120 feet from the location of the proposed filling station, and is on the opposite corner from the land involved. It has three 5,000-gallon underground storage tanks, with six pumps; and

3. "There are, in addition to the two service stations * * * three filling stations on the north side of Edmondson Avenue near the property involved in this Petition and Appeal, which filling stations have the necessary pumps and accessory uses."

It thus appears that in close proximity to the site of the proposed filling station there are now five filling stations.

In addition to the large quantities of gasoline stored in the five filling stations in the close vicinity of the site of the proposed filling station, the appellant intends, if he is successful in this case, to install four 2,000-gallon tanks and four pumps for the storage and sale of gasoline. The plan of the appellant is to construct a driveway over the present pedestrian walkway so that automobiles may be driven from Edmondson Avenue to the pumps, and to construct a second driveway across the walkway used by pedestrians so that automobiles may have an ingress and egress to and from its pumps.

Attached to the petition of appellant are certificates of:

1. Board of Fire Commissioners, that the proposed filling station was not a fire hazard.

2. Commissioner of Health, that no public health hazard was involved.

3. Police Commissioner, that erection of the proposed filling station would not create a traffic hazard.

4. The Chief Engineer of the City, and the Buildings Engineer, that they would require the applicant to erect the service station and install the tanks and pumps in accordance with the City Ordinance, and recommending the approval of the application.

It was vigorously argued by appellant's counsel that there was no evidence in the case to contradict the certifications made by these city officials, and that, therefore, the erection of this filling station, tanks and pumps, on the record in this case, would not "menace the public health, safety, security, and morals," and "* * * the uncontradicted evidence before the Board was to the effect that the proposed use would not menace the public health, safety, security and morals, would not create any fire hazard, any health hazard, or traffic hazard, or any structural or other hazard." We might comment here that the recommendation of one or more of these city

officials would not preclude the Board or the court on review of the Board's action from considering other matters contained in the record. If this were not so, then a permit would be automatically issued upon the recommendation of these officials. Of course, this is not so. The Board of Zoning Appeals is the lawful agency to pass upon an application for a permit to erect a gasoline station, and the recommendation of these city officials was not intended to prevent the Board from either granting or refusing a permit. The recommendation of these officials is to be given consideration by the Board, in connection with the other facts in the case, and if the Board, based on evidence to the contrary, does not agree with the recommendation of these officials it is not required to follow their recommendation. The protection against a fire hazard, given to a community by the Board, is a proper exercise of the police power. In addition to the question of whether the erection of this proposed filling would constitute a hazard to pedestrian traffic, we think a substantial question in this case is whether the erection thereof involves the element of a fire hazard. And this, in turn, reduces the matter to a question of whether the facts before the Board were sufficient for it to reasonably conclude that the granting of this permit would increase the present danger from fire because of the existence of five filling stations in the vicinity of the site of the proposed filling station. If there was such evidence, it could in reason be a basis for refusing the application, because it would augment the present danger from fire occasioned by the numerous filling stations close by, and thus expose people living and doing business in this vicinity to a fire hazard.

It is contended by appellant that there was no expert testimony to contradict the recommendations of the various city officials, but it seems to us that it is a matter of common knowledge that gasoline is a highly inflammable and dangerous commodity. Of course, filling stations are necessary to our modern way of life and every

precaution consistent with the business is taken to render a gasoline station safe for the public, but we cannot close our eyes to the fact that a multiplication of such stations in a comparatively small locality increases the danger to the public, notwithstanding the care and caution with which the business may be conducted. This Court has commented on this subject upon two previous occasions.

In *Pocomoke City v. Standard Oil Co.*, 162 Md. 368, at page 382, 159 A. 902, at page 907, the Court, through Judge Offutt, said: "While the plans submitted for the proposed station indicate that the station and its approaches will be attractive, substantial, and convenient, and, while it is a matter of common knowledge that many thousands of similar stations are daily and continuously operated under varying conditions without damage or injury to the public or nearby property, nevertheless, because of the highly inflammable character of the materials which they distribute, it cannot be denied that they do to an extent at least increase the danger of fire, and it is equally apparent that the location of such a station in a locality so congested would necessarily tend to increase the traffic congestion to a point where it might seriously affect the public safety."

Quoting from *Standard Oil Co. v. City of Minneapolis*, 163 Minn. 418, 204 N. W. 165, Judge Offutt further said: "It is common knowledge that the business of maintaining the proposed filling station involves the keeping of large quantities of gasoline and oil, and the dispensing it to drivers of automobiles. The gasoline is stored in large, steel tanks, which are placed about four feet underground. The method of drawing the same from the containers and transferring it to the cars of the buyers is fraught with danger. Gasoline is highly inflammable and a violent explosive, all of which was undoubtedly considered by the council, as well as by the court, in affirming the acts of that body."

In that opinion Judge Offutt also quoted from *Storer v. Downey*, 215 Mass. 273, 102 N. E. 321, 322, as follows:

"Oil and gasoline, almost inevitably stored and used in them, are so highly inflammable and explosive that they may increase the danger of fire, no matter how carefully the building be constructed nor how non-combustible its materials. Although lawful and necessary buildings, they are of such character that regulation of the place of their erection and use is well within settled principles as to the police power."

In *Kramer v. Mayor and City Council of Baltimore,* 166 Md. 324, 171 A. 70, the court dealt with a demurrer filed by the city in a suit to compel it to issue a permit for a filling station. At pages 333, 334 of 166 Md., at page 74 of 171 A., Judge Urner said: "An admission by the demurrer that the filling station desired by the appellants would not in itself be a menace to interests entitled to protection is not equivalent to a concession that it would not be thus objectionable as an addition to existing stations of the same kind in the vicinity. The number already allowed in that locality may have reached the limit of safety. The multiplication of such stations may in itself be a menace, as we said in *Pocomoke City v. Standard Oil Co., supra.*"

It is contended that because of the numerous filling stations in the vicinity of the site for the proposed station, not to grant the application in this case would amount to an unlawful discrimination. This is not correct, as the two Maryland cases just cited hold.

Since the decision in the Kramer case, the Legislature has authorized the city to confer power upon the Zoning Board to grant applications for filling stations. The Baltimore City Zoning Ordinance, Paragraph 35, repeats the authorization and designates the Baltimore City Court the court of record for review.

We may note that the Buildings Engineer was never possessed of the power to grant a license for a filling station. Originally such an application could be granted only by ordinance. In *Mayor and City Council of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804, 805, it was said: "Application for the permit was filed initially

with the Buildings Engineer, denied in accordance with the provisions of paragraph 34-A of the Zoning Ordinance, and referred to the Board of Zoning Appeals."

From the very beginning of zoning in Baltimore City an application for a permit to erect a filling station was treated differently from applications for other uses, thus emphasizing the caution to be exercised in the consideration of an application for a filling station.

Upon a consideration of evidence contained in this record, there is evidence from which a reasonable conclusion can be drawn that the number of filling stations in the area of the site of the proposed filling station has reached a saturation point. The Board could well hold if a filling station is erected upon the proposed site, that it will constitute a menace to the safety and security of the residents in that locality. We have repeatedly held that if the evidence before the Board substantially supported its conclusion that its finding would not be disturbed even though this Court did not agree with its conclusion. *Mayor & City Council v. Biermann, supra,* and cases cited; *Heath v. Mayor & City Council,* 187 Md. 296, 49 A. 2d 799; *Mahoney v. Byers,* 187 Md. 81, 48 A. 2d 600.

If, because appellant asserts that his constitutional rights are denied without due process, he is entitled to the independent judgment of the court on the law and facts so far as his constitutional rights are concerned, what we have already said, and what was said in the Pocomoke City, Kramer and Biermann cases, *supra,* is sufficient to show that appellant has failed to show any impairment of his constitutional rights or to overcome the strong presumption that denial of a permit for a filling station, whether by legislative or administrative action, is within the police power.

It was argued that the Zoning Board did not make a finding of fact of what its members saw when they visited the site of this proposed filling station. However this may be, what the members of the Board saw at that time must have been depicted by the evidence ad-

duced before them. The conditions with which the Board had to deal were vividly described in the record. It is contended that negative testimony does not disprove positive evidence, and that the respective certifications of the city officials are uncontradicted. But the condition surrounding the site of this proposed filling station does not harmonize with the conclusion that the security and safety of the people in that vicinity would not be menaced. In *Heaps v. Cobb,* 185 Md. 374, 45 A. 2d 73, there was no evidence in the case to support the finding of the Board of Trustees, but in this case there is evidence to support the finding of the Board of Zoning Appeals. It is true that the reason set out in the resolution of the Zoning Board for refusing to grant this permit is not based on the reason pointed out in this opinion. Without deciding the question of whether the reason given by the Board is correct or not, it is none the less true that if its conclusion was correct it will not be set aside, even if the reason given therefor is wrong.

Judge Salyer, who heard this case in the Baltimore City Court, was "unable to hold that the decision of the Board of Zoning Appeals was discriminatory, unreasonable, arbitrary or not founded upon substantial facts." In this view we are in accord.

> *Judgment of June 12, 1946, and Order of June 17, 1946, affirming the decision of the Board of Zoning Appeals, dated April 20, 1946, affirmed, with costs.*