249 S.W.2d 491 (1952)
VEAL et al.
v.
LEIMKUEHLER et al.
No. 28384.
St. Louis Court of Appeals, Missouri.
May 20, 1952.
Rehearing Denied June 27, 1952.
*493 Timothy R. Veal, St. Louis, pro se and for appellants.
James E. Crowe, City Counselor, John P. McCammon, Associate City Counselor and John J. Shanahan, Asst. City Counselor, St. Louis, for respondents.
HOUSER, Commissioner.
This is an appeal from the judgment of the Circuit Court of the City of St. Louis sustaining and affirming an order of the board of adjustment of said city revoking an alteration permit granted by the building commissioner to Timothy and Olivette Veal.
The property involved in this matter, owned by Timothy and Olivette Veal, is located at 4311 Page Boulevard in St. Louis. For many years it was used as residential property. Under Zoning Ordinance No. 35003, as amended by Ordinance No. 35009, effective May 26, 1926, it was zoned for commercial use. On March 6, 1950 Timothy and Olivette Veal applied to the building commissioner for a permit to make alterations on the building in order to use it as a funeral home and for a permit to occupy the building as a funeral home. On April 25, 1950 Ordinance No. 45309, a new zoning ordinance, was approved, to become effective 30 days thereafter. Under Ordinance No. 45309 this property was re-zoned and classified as "C" Four Family Dwelling District. On May 13, 1950 the building commissioner issued Alteration Permit No. S 4566 and Occupancy Permit No. S 4567 granting permission to alter and to occupy the premises for use as a funeral home. On August 17, 1950 Block Unit 48 filed an appeal for the revocation of Permit No S 4566, and on September 13, 1950 a hearing was held thereon before the board of adjustment.
At the hearing it was shown that the proposed use of the property would create a traffic hazard, imperil the safety of children living in the block, increase the parking problem, depreciate property values in the neighborhood and destroy the enjoyment and privacy of nearby residential property owners by creating a morbid and depressing atmosphere; that the property was being used for residential purposes; that Mr. Veal went to the building commissioner's office and was aware that the ordinance was to be changed; that petitions in opposition to his establishment of a funeral home were being circulated; that the circulation of the petitions commenced in April when the property owners heard that Mr. Veal was planning to open this business; that 110 signatures were obtained; that Mr. Veal had notice that the ordinance was changed; that persons were living in the house at the time the ordinance was passed and *494 "up to June"; that as late as July 10 Mr. Veal had tenants in the place; and that Mr. Veal did not conduct any funeral at any time.
Timothy R. Veal testified that the house had been in the commercial zone for more than 40 years; that desiring to use the property for a funeral home he and his wife made application to the building commissioner who found, after inspection, that the building was commercial; that the house could be used for a funeral home with very little alteration; that petitioners obtained a permit to make certain alterations on May 13, 1950 and that two weeks before the new ordinance went into effect they "went into business with the funeral home, making repairs and buying things"; that on May 18, 1950 they paid $25 for a license to operate; that they began "operating" before the new law went into effect; that although as of September 13, 1950 no funerals had been conducted from the premises, he had had several calls with respect to funerals before May 26, 1950 and that he was "available at any time" to perform funeral services; that "since going into business (petitioners) have spent $5,681.00 for a hearse, truck, and other things * * * prior to and after May 26, 1950"; that he "imagined" $3,000 was spent prior to May 26, 1950. He acknowledged that "someone was living downstairs" but contended that the permit included the entire building and premises, stated that they have preparation rooms in the basement and a display room on the second floor. He testified that there is a church on the corner, a cleaning establishment in the middle of the block, on another corner they sell whiskey. When asked if it was not true that most of the money had been expended on movable equipment he answered "No, there was a lot spent on changing the ceiling and the chapel and making the building fireproof." He further testified that he had canceled checks to show the expenditure of $5,600. He offered in evidence Permits Nos. S 4566 and S 4567 and evidence that the property was "commercial" when the permits were granted.
On this evidence the board of adjustment granted the appeal, thereby revoking Permit No. S 4566, and ruled that "the 1950 ordinance has placed this property in the `C' four-family dwelling district, and the holder of the permit has not expended an appreciable sum of money to carry out the work for which it was issued, and has not established non-conforming use. To allow the permit to remain in force would be a distinct detriment to this predominantly residential neighborhood." A rehearing was held on September 27 and on October 25 the board affirmed the order of September 13.
On November 3, 1950 Timothy and Olivette Veal filed in the circuit court an application for a writ of certiorari naming the five members of the board of adjustment as respondents, praying for the issuance of the writ to the end that the proceedings before the board be certified to the circuit court and the board's order reversed for illegality because (1) the petitioners had a lawful non-conforming use on the effective day of the new zoning ordinance; (2) of undue hardship; (3) the order violates Missouri Constitution 1945, art. I, §§ 10 and 13, V.A.M.S. and U.S. Constitution, Amendment XIV. The respondent board members filed a return attaching thereto a transcript of the proceedings before the board of adjustment, and asserting that the board "properly and lawfully revoked the permit theretofore issued to the appellants." The cause was submitted on the pleadings and the circuit court entered the judgment referred to in the first paragraph of this opinion. Following the overruling of appellants' after-trial motions an appeal was duly prosecuted to this court.
Although all parties concede that we have jurisdiction we make special reference to the question since appellants seek to inject certain constitutional questions into the case by contending that the order of the board of adjustment violates Missouri Constitution 1945, art. I, §§ 10 and 13, and U. S. Constitution, Amendment XIV. If there is a question in the case "involving the construction of the Constitution *495 of the United States or of this State" we should transfer the case to the Supreme Court for determination. Constitution of Missouri 1945, art. V, § 3.
The first constitutional question sought to be raised is whether Olivette Veal was deprived of property without due process of law by not having been given due notice of the hearing of September 13, 1950 at which the permit was revoked. This question is not in the case because it was not raised at the earliest practical opportunity. Nowhere in the application for the writ of certiorari is reference made to this point. So far as the record shows the point was first raised in the briefs filed in this court. We are therefore not deprived of jurisdiction on this account. 2 V.A.M.S. p. 54, note 43, Annot. to Constitution of Missouri 1945, art. V, § 3.
Appellants' chief complaint on constitutional grounds is that the order of the board destroyed vested rights; that in reliance on the permit appellants proceeded in good faith to incur obligations for supplies and equipment, made alterations in the building and established and were operating a funeral home in a commercial district on and before May 26, 1950, the time when Ordinance No. 45309 became effective; that before that date they converted the residence into a funeral home which is a non-conforming use permitted by the terms of the ordinance itself to continue since it existed prior to the effective date of the ordinance; that appellants' rights under the permit became vested rights protected by federal and state constitutional guarantees, and that in construing and applying the ordinance to Veal Mortuary the board gave the ordinance retrospective operation, all in violation of Missouri Constitution 1945, art. I, §§ 10 and 13, and U. S. Constitution, Amendment XIV. There is, however, no constitutional question in the case. The order of the board of adjustment does not involve or raise any question of the construction of either the federal or state constitution. There is no contention that Ordinance No. 45309 or any provision thereof is unconstitutional. To the contrary appellants concede its constitutionality. There is no conflict between the parties in their construction of the constitution. Both sides agree that vested rights are entitled to constitutional protection.
Appellants say that this is a case of the erroneous construction of a constitutional ordinance and an application of the ordinance in such a manner as to invade their constitutional rights. If that be true, a constitutional question has not been raised in the appellate jurisdictional sense. Curtin v. Zerbst Pharmacal Co., 333 Mo. 346, 62 S.W.2d 771, loc. cit. 772.
The only substantial question in the case is the proper determination of the fact issue whether, in reliance upon the alteration permit, appellants spent a substantial amount of money altering their residence property and whether they established a non-conforming use thereof before the zoning ordinance became effective. The board of adjustment decided against appellants on this issue. Our task is to determine the correctness of the action of the circuit court in its review of that decision.
Judicial review of the order of the board of adjustment is provided for in Chapter 89 RSMo 1949, V.A.M.S. This is the enabling act by which the General Assembly empowered the City of St. Louis to pass Ordinance No. 45309. Section 89.110 of said Chapter 89 prescribes the jurisdiction of the circuit court in reviewing decisions of the board of adjustment. Section 19 D 5 of the zoning ordinance follows the language of § 89.110 in every pertinent particular, and practically verbatim. These provisions limit the authority of the circuit court to the correction of illegality: if the circuit court finds the order under review "illegal" it may reverse or affirm, wholly or partly, or modify the order so as to correct the illegality. This narrow scope of review, however, must be read in the light of the minimum standard for review provided by Constitution of 1945, art. V, § 22, requiring that the review of all final decisions of any administrative body in which a hearing is required shall include the determination whether the same are "supported by competent and substantial evidence upon the whole record." *496 Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647. The circuit court may not substitute its own judgment on the evidence for that of the board, Wood v. Wagner Elec. Corp., supra; In re Botz, 236 Mo.App. 566, 159 S.W.2d 367, loc. cit. 373, but the circuit court is authorized to decide whether the board of adjustment reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Mann v. Mann, Mo.App., 239 S.W.2d 543.
While the case may not be tried de novo by the circuit court in the sense that the circuit court may substitute its discretion for the discretion of the board of adjustment, it may be tried de novo for the purpose of determining whether the order of the board is illegal, and the circuit court is not bound by an arbitrary or capricious action of the board, or where there has been a manifest abuse of discretion. Berard v. Board of Adjustment of the City of St. Louis, Mo.App., 138 S.W.2d 731.
Block Unit 48 appealed to the board of adjustment from the decision of the building commissioner granting the alteration permit. The appeal was taken on the ground that the establishment of a funeral home constituted a commercial use in a residential district. The permittee's defense was that he acquired a vested right to the permit by making and contracting for substantial expenditures for alterations, thereby giving him a vested right to the continued enjoyment of the permit, and that he had established a non-conforming use prior to the effective date of the ordinance and that the ordinance excepted non-conforming uses in existence prior to that date. The burden of proof rested on the permittee to establish such affirmative defense.
In support of the defense that he made substantial expenditures for alterations Timothy R. Veal testified that two weeks before the ordinance went into effect he began making repairs; that "there was a lot of money spent changing the ceiling and the chapel and in making the building fireproof." He exhibited to the board of adjustment a written list of expenditures incurred and contracted for which showed that prior to the effective date of the ordinance he spent or contracted to spend $120 for roofing, $571 for plastering, $81 for papering, $450 for painting, $96 for fire doors, $25 for plumbing, $80 for architectural drawings, $301 for plastic tile, $240 for a neon sign, $256 for fencing, plus other miscellaneous items; that after that date he spent or contracted to spend $150 for paper and paint, $25 for lumber, $164 for awnings, $50 for curtains and shades, and $150 for repairing the walls and painting the preparation room. No person appearing on behalf of Block Unit 48 denied that money was spent in altering the premises from a residential to a commercial use. Nevertheless the board of adjustment found that "the holder of the permit has not expended an appreciable sum of money to carry out the work for which it was issued."
It is apparent that the board of adjustment gave the evidence offered by permittee Timothy R. Veal no weight whatever and utterly rejected it. It is the duty of the board of adjustment to find and determine the facts and in so doing to weight the evidence presented to it. It may disregard and disbelieve evidence which in its judgment is not credible even though there is no countervailing evidence to dispute or contradict it. State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, loc.cit. 65. The testimony of Timothy R. Veal consisted of vague and indefinite statements and conclusions. He "imagined" that $3,000 was spent prior to the effective date of the ordinance. He stated he had canceled checks in the amount of $5,600 "to prove that the bills were paid", but he did not produce them. He admitted that tenants were in the building at the very time the substantial alterations were being made. His good faith was brought into question by the revelation that he anticipated some change in the zoning regulations and during the 30-day interval before the ordinance became effective had personal knowledge that a new zoning ordinance was going into effect. *497 It was during that interval that he claims to have begun the making of the alterations. The documentary evidence exhibited to the board constituted hearsay evidence and was not supported by oral testimony. Inadmissible evidence, including hearsay evidence, admitted without objection must be considered, but the probative force to be given such evidence is a matter for the administrative tribunal to determine. While the trial court, or this court, might well have reached the opposite conclusion on this evidence, neither court can substitute its judgment for that of the board of adjustment, and we do not believe that the evidence, taken as a whole, overwhelmingly pointed to the conclusion that substantial alterations were made in reliance on the permit, nor do we conclude that in rejecting the evidence the board of adjustment was guilty of a manifest abuse of discretion or that its action was arbitrary or capricious.
In support of the contention that he had established a non-conforming use of the premises as a funeral home prior to the effective date of the ordinance Timothy R. Veal gave the testimony which we summarized in the first part of this opinion, and in addition offered three affidavits in which three men with extensive funeral-equipment and supply experience deposed and said that Timothy Veal had called on them in February, 1950 with reference to the purchase of funeral-equipment and service; that Mr. Veal expressed his intention to establish a funeral home at 4311 Page Boulevard; that in May, 1950 each of the three called on him at his place of business; that on May 19 he purchased a hearse, ambulance cot, church truck and kneeling rail; that on May 19 he had set up his funeral home office on the second floor of the building in which there was a telephone, a desk, chairs and several diplomas and licenses on the walls, including a license issued by the city giving him the right to operate a funeral home at that address; that he answered the telephone saying "Veal Mortuary, Mr. Veal speaking"; that there was a reception room and a space for a casket room on the second floor; that a preparation room had been prepared in the basement; that there were embalming tables, embalming fluids and instruments in the 4-car garage along with a hearse; that for all intents and purposes it was the opinion of the affiants that on May 19 or May 22 Mr. Veal "was engaged in the funeral business, doing such business from 4311 Page Boulevard, offering his services to the general public as a going funeral home." These affidavits were hearsay evidence, and as we said with reference to the documentary evidence of expenditures made and incurred, the probative force, if any, of such hearsay evidence was for the board of adjustment to assess.
There was substantial evidence inconsistent with the use of the premises as a funeral home, viz.: that on May 26, 1950 tenants were living on the premises as a residence; that some one was living downstairs; that appellant Veal asked the tenant to move but that she refused; that tenants were occupying the building as late as July 10, and that as of September 13 no funeral had been conducted from the premises.
On this evidence the board of adjustment found that Timothy Veal "has not established a non-conforming use." Again looking at the record as a whole we cannot say that in this particular the decision was clearly contrary to the overwhelming weight of the evidence or that the board of adjustment acted illegally or in an arbitrary or capricious manner or that its decision was not supported by competent and substantial evidence on the whole record.
Finally, appellants charge that the board's order is void because it was an attempt to legislate beyond its power, by effectively repealing the provision of the ordinance exempting the application of the ordinance in the case of a prior existing non-conforming use and by reading into the ordinance provisions and conditions not therein contained; that if the ordinance be construed as giving the board of adjustment this power it set up no uniform rule, test or set of standards to guide the board; and that the ordinance did not give the board of adjustment the power to revoke the permit for the reasons assigned *498 by the board. This claim of illegality was not specified in the application for the writ of certiorari, as required by the ordinance, and therefore was waived. Furthermore, in making this assignment, appellants assume that the board found or was obliged to find that a non-conforming use existed prior to the effective date of the ordinance and that the board rewrote or construed the ordinance in such manner as to negative the provision exempting non-conforming uses. That assumption is not justified. This is not the case of a mistaken application of a rule of law to a finding of fact favorable to appellants. The board in effect determined that appellants had no vested rights and had not established a non-conforming use. The board did not undertake to vary, modify or amend the general rules and regulations of the ordinance, as claimed. On the contrary the board undertook to enforce the ordinance by prohibiting a funeral home in a "C" four-family district upon a finding of facts which did not justify the conclusion that appellants were entitled to an exemption. Its order granting the appeal on that determination constituted a proper exercise of the power to revoke a permit authorizing the alteration of a building from a residential to a commercial use in a "C" four-family district.
The inclusion in the order of a finding that "to allow the permit to remain in force would be a distinct detriment to this predominantly residential neighborhood" is responsive to the issue of hardship raised by appellants, and indicates that the board considered that the detriment to the community by permitting a funeral home to be established therein outweighed the personal hardship which appellants would sustain by the revocation of the permit. Whether right or wrong, necessary or not, the inclusion of this finding does not vitiate the order where the board reached a permissible conclusion upon the basis of other findings within its jurisdiction to make. Hoffman v. Mayor and City Council of Baltimore, 187 Md. 593, 51 A.2d 269.
A procedural defect counted on by appellants is the alleged invalidity of the respondents' return based upon the fact that it was not verified, as required by section 89.110 RSMo 1949, V.A.M.S. The circumstance that the return was not verified was not fatal to the rights of the respondents nor decisive in favor of appellants. This defect in form was waived by submitting the cause to the trial court without objection. It was an irregularity rather than an illegality. 14 C.J.S., Certiorari, § 130. By field v. City of Newton, 247 Mass. 46, 141 N.E. 658; Ferris Extraordinary Legal Remedies § 183.
There was no error. The Commissioner recommends the affirmance of the judgment.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.