257 S.W.2d 167 (1953)
LONG
v.
MISSISSIPPI LIME CO. OF MO. et al.
No. 28484.
St. Louis Court of Appeals. Missouri.
April 21, 1953.
*168 Luke, Cunliff & Wilson, Charles F. Luke and Earl B. Simpson, St. Louis, for appellants.
Melvin Englehart, Fredericktown, for respondent.
HOUSER, Commissioner.
In a proceeding filed under the Workmen's Compensation Law a referee of the Division of Workmen's Compensation denied the claim of Densel L. Long, employee, and found in favor of Mississippi Lime Company of Missouri, employer. On review the industrial commission affirmed the award of the referee and found that the employee "failed to prove that the condition of which he complains was either caused or aggravated by an accident arising out of and in the course of his employment with the Mississippi Lime Company of Missouri, as alleged." On appeal the circuit court reversed and set aside the final award of the industrial commission denying compensation and remanded the cause to the industrial commission. From the judgment of the circuit court the employer and insurer have appealed to this court.
In his claim Densel Long recited that on January 29, 1949 while he was cleaning a concrete pit near the mill of the lime company he fell from an auger running lengthwise through the pit, striking his chest and right side against the wall of the pit and wetting his feet in ice water and snow, thereby injuring his chest and right side and causing dizziness, which injury later developed into chronic bronchitis and chronic pleurisy. The employer and insurer filed an answer containing a general denial and a plea that the employee had not filed his claim within the time prescribed by law.
As to the facts surrounding the accident, claimant offered his own uncorroborated testimony as follows: On Saturday, January 29, 1949, between the hours of 8 and 8:30 A.M., pursuant to the instructions of his foreman Estel Smith, claimant started to clean a concrete pit in which waste material, ice and snow had collected. About 9 A.M., while shoveling material out of the pit, standing with his left foot on the auger, his foot slipped down in the hole, his arm caught on the concrete wall, his arm went over, and that part of his body under his right arm struck against the wall. He fell and got his feet "all wet." He continued to work in the pit. About 11 A.M. the maintenance crew came and dug a pipe out of the pit. At about 3 P.M. "a fellow" built a fire and claimant tried to dry his feet. He quit work at 3:30 P.M. A coworker, one Al Reisinger, came to work with him on January 29, 1949 about an hour *169 after he went to work. Claimant was positive that Reisinger worked with him on that particular day and that the day was January 29, 1949. He was positive as to the place where they worked, namely, the pit near the rotary lime kiln. At home that evening claimant took chills, had fever and went to bed, where he stayed the next day. He developed an "awful soreness" in his right arm, chest and in the back between the shoulders. This continued and he was up and down, in and out of bed, for eight or ten days, during which period he did not work. On February 14 he returned to work, took a dizzy spell and was placed on lighter work. He was then coughing and spitting up a grayish jelly-like substance. He worked the 14th and 15th of February and then, according to claimant, he was obliged to quit and has been unable to do any appreciable amount of work since that time. On February 15 he developed chills and fever.
In March, 1949 claimant was treated twice by Dr. O. J. Miller who found his chest congested. He thought he had traumatic pneumonia. Thereafter claimant was examined by Dr. Staunton, who advised an X ray and suggested that claimant report his illness to Mississippi Lime Company. Claimant followed his advice and told Mr. Adams, personnel manager of the lime company, that he was "just going to have to have some treatment" and that he wanted to know what was wrong with him. He informed Mr. Adams of his recent illness but did not report any accident occurring on January 29. Mr. Adams sent claimant to the company doctor, Dr. Sexauer, who examined him and gave him some medicine. Thereafter claimant started to spit up pure blood. His chest condition got worse. He was having chills and fever three or four times a week. In the latter part of April, 1949 claimant went to Dr. William H. Bailey, his family doctor since 1931. Dr. Bailey advised him not to go back to work but to rest and prescribed medicine for him to take when he felt this "filling up" in his lungs.
On October 20, 1949 claimant consulted Dr. J. J. Bredall who took X rays and blood tests and gave him a physical examination. His diagnosis was chronic pleurisy, chronic emphysema, chronic bronchitis and hypertrophic arthritis. He examined him on twelve occasions between October, 1949 and July, 1950. It was his opinion that claimant had been suffering from bronchitis "for a number of years. Maybe 2-3-4 years;" that the fall did not cause the bronchitis and that the effect of the fall was temporary, but that the physical trauma would aggravate the condition and he would suffer from increased trouble because of both the trauma and the exposure of his feet to wet and cold.
Claimant further testified positively that after the accident in January, 1949 he did not tell any of the doctors about what had happened to him at the lime company, i. e. did not relate the facts concerning his fall, although he consulted Drs. Miller, Staunton, Sexauer and Bailey. On October 20, 1949 he did relate the facts to Dr. Bredall. He further testified that the first time he ever told anyone connected with Mississippi Lime Company about the accident was on November 15, 1949 when in the company of his attorney he went to the Mississippi Lime Company plant to inspect his work record.
In answer to the question whether he had experienced soreness in his chest, coughing and spitting prior to the date of the accident, claimant testified that he had a spell like that and was sick for a month or six weeks, under the treatment of Dr. Bailey, in the year 1946. Dr. Bailey had treated claimant for the same condition on several occasions prior to January, 1949. On May 27, 1945 Dr. Bailey treated claimant for laryngeal tracheobronchitis. At that time he spit up blood. An X ray in October, 1945 revealed calcified tubercle in the right bronchieclosis and the doctor testified that "from that time on whenever the boy would be exposed to dampness, cold or snow, he would frequently take an acute attack of bronchitis and be laid up for a week;" that he treated him "very frequently for this same trouble * * * every time he would get exposed;" that his working in the snow and water with his limited resistance could throw him into another bronchitis attack; that the bronchitis and *170 pleurisy "would be brought on" by exposure. Claimant went to work for the lime company in April, 1948. On October 20, 1948 Dr. Bailey treated claimant for a very serious attack of bronchitis and pleurisy in the right side of his lung.
The evidence introduced on behalf of the employer and insurer consisted of the testimony of Dr. Charles W. Miller of St. Louis, who examined claimant on March 21, 1950 for the purpose of testifying, Estel Smith, claimant's foreman, and certain documentary evidence. Dr. Miller testified that claimant did not have chronic pleurisy; that there was no evidence of lung disease; that while he "might" have a mild degree of bronchitis he could find no very marked variations from the normal in physical or laboratory studies conducted, and that claimant was able to work at his previous occupation. Estel Smith testified that he kept a daily foreman's time report, identified and introduced as Exhibit 1, which showed that Densel Long worked on January 29, 1949; that the work he did on that day was to "pour concrete, mine change house walls" and that Albert Reisinger was absent from work on that day. The lime change walls are located underground in the mine. The pit near the south rotary mill, where claimant testified the accident happened, is aboveground and at least a mile distant from the place where the record showed that claimant was working. The work records on previous days in January showed that at no time did claimant work in the pit where he claimed to have sustained the accident.
The question on this appeal is whether the circuit court erred in reversing and setting aside the award of the industrial commission. An appellate court, in reviewing the evidence upon the basis of which the industrial commission made its award, must view the evidence in the light most favorable to the successful party below. Harper v. Home Imp. Co., Mo.Sup., 235 S.W.2d 558. Neither the circuit court nor the appellate court may substitute its judgment on the evidence for that of the commission. Both courts are authorized and bound to decide whether the commission reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, i. e. whether the award made by the commission is supported by competent and substantial evidence upon the whole record, Constitution of 1945, Art. V, § 22, V.A.M.S., Frazier v. National Bearing Division, Mo.Sup., 250 S.W.2d 1008, loc. cit. 1011 and cases cited; Brown v. Griesedieck Western Brewing Co., Mo.App., 250 S.W.2d 803; Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, loc. cit. 496, and cases cited, and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Veal v. Leimkuehler, supra.
Tested by this standard we are impelled to sustain the award of the commission denying the claim. The commission's finding that the condition complained of was not the result of an accident arising out of the employment is adequately supported. The condition complained of was chronic bronchitis and chronic pleurisy. A finding that the accident caused these chronic conditions would have been against the overwhelming weight of the evidence, because claimant himself, as well as his doctors, testified that he had suffered from chronic bronchitis and pleurisy for a number of years prior to the date of the accident. A finding that claimant's chronic conditions had been aggravated by an accident such as that described by claimant would have been supported by the testimony of claimant and Drs. Miller, Bredall and Bailey, if the commission had accepted the testimony of claimant that the trauma and exposure actually occurred. It is obvious, however, that the commission rejected claimant's evidence in this regard. There was a reasonable basis for the action of the commission in so doing. Charged with the duty of finding and determining the facts and empowered to weigh the evidence presented, the referee and commission had the right and duty to pass upon the credibility of claimant as a witness and could disregard and disbelieve evidence which in their judgment was not credible, even though there was no countervailing evidence to contradict or impeach it. Smith v. Smith, Mo.Sup., 237 S.W.2d 84, loc. cit. 89 and cases cited; Veal v. Leimkuehler, *171 supra, 249 S.W.2d loc. cit. 496 and case cited. The referee and commission might well have disbelieved that the accident occurred upon a consideration of claimant's actions after January 29, 1949. Upon returning to his employment on February 14 and experiencing dizzy spells he did not report to his foreman that an accident had occurred on January 29. When obliged, for physical reasons, to quit work on February 15 he made no such report. When in the early months of 1949, after conferring with a doctor, he went to see Mr. Adams (the employer's personnel manager) in connection with the condition of his health, claimant did not inform Mr. Adams that he had experienced a fall or had suffered from exposure to the elements. Although he conferred with four doctors over a period of several months in his efforts to effect the restoration of his health, claimant testified positively and unequivocally that he did not relate the occurrence of such an accident or exposure to any one of them until October, 1949 when he finally told Dr. Bredall about an accident. Even then he said nothing about the occurrence of an accident until the occasion of his second visit to Dr. Bredall. Claimant failed to report the accident to anyone connected with the employer until November 15, 1949, which was nine and one-half months after the alleged accident. Such a course of conduct is inconsistent with the occurrence of the accident and may well have led the fact-finding body to discount claimant's testimony that it happened. Diebold v. Great Atlantic & Pacific Tea Co., Mo.App., 241 S.W.2d 31.
Further doubt was cast upon claimant's story by reason of the fact that it conflicts with impressive documentary evidence. Michler v. Krey Packing Co., Mo.Sup., 253 S.W.2d 136, loc. cit. 141. Claimant insisted that the accident occurred on a particular date and at a particular place, in the face of documentary evidence in the form of a work sheet signed by the foreman which definitely showed that on the date in question claimant was working underground in the mine pouring concrete at the mine change house and not aboveground near the rotary lime kiln, as claimant testified. Although he testified positively that Al Reisinger worked with him that day at that place, and that a maintenance crew was there on that morning within an hour or two after he claims to have been injured, the employer's records showed that Reisinger was absent from work on that day. Claimant's testimony was the only evidence as to the occurrence of the accident. None of the maintenance crew was called to substantiate claimant's story that he was working then and there in snow and water. The "fellow" who built the fire at 3 P.M. did not testify. Claimant relied solely upon his own credit as a witness and testified to facts which revealed a course of conduct inconsistent with the occurrence of the accident and of such a nature that any fact-finding body might well conclude that there was no causal relation between such an accident and the condition of which he complained.
The award of the referee and of the full commission denying compensation was not against the overwhelming weight of the evidence. We cannot say that their findings are not supported by substantial evidence on the whole record. The circuit court erred in reversing the award of the commission. The judgment of the circuit court should be reversed, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed.
BENNICK, P. J., and ANDERSON and HOLMAN, JJ., concur.