Edward L. DUNBAR et al., Plaintiffs-Appellants,

v.

BOARD OF ZONING ADJUSTMENT et al., Defendants-Respondents.

No. 24214.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1965.

Walter A. Raymond, William W. Cochrane, Raymond, West & Cochrane, Kansas City, for appellants.

Herbert C. Hoffman, Guy W. Rice, Kansas City, for Board of Zoning Adjustment.

William E. Kemp, James P. Tierney, Kansas City, for Receiver-Arizona Savings & Loan Assn.

SPERRY, Commissioner.

The receiver of the Arizona Savings and Loan Association, Franklin J. Stowell, filed application for authorization to construct a temporary sewage lagoon in Kansas City, Missouri (North), before the Board of Zoning Adjustment. After a hearing thereon the Board approved the application. Appellants, plaintiffs below, instituted a certiorari proceeding in the Circuit Court of Platte County, seeking a review of the above order and ruling. Defendants are Mr. Stowell and the members of the Board. From an adverse judgment, plaintiffs prosecute this appeal.

Plaintiffs are the City of Weatherby Lake, the Weatherby Lake Improvement Company, and citizens, property owners and residents of the City of Weatherby Lake who use the waters of the lake, around which the residences of the city are built, for drinking, domestic purposes, boating, swimming and fishing. Their contention is that, since the effluent of the proposed lagoon, including detergents, will drain into Rush Creek, from whence it will enter Weatherby Lake, one and three-eights (1⅜) miles below, it will result in poisoning and contaminating its waters to the great injury of the health and welfare of the citizens of the City of Weatherby Lake, and to the great economic loss to property owners thereof because of lower property values which will follow.

■ Our scope of review, in this case, is as stated in Veal v. Leimkuehler, Mo. App., 249 S.W.2d 491, 495–496. We are to determine whether the decision of the Board of Zoning Adjustment is supported by competent and substantial evidence upon the whole record. We may not substitute our judgment on the evidence for that of the Board, but we shall decide whether the Board reasonably could have made its findings and reached its result upon consideration of all the evidence before it; and we will set aside such decision *if it is clearly contrary to the overwhelming weight of the evidence.*

Weatherby Lake is a body of fresh water, of two hundred sixty-eight (268) acres, of an average depth of probably thirty (30) feet, located in the center of the Fourth Class City of Weatherby Lake, which is zoned for residential uses only. There are about six hundred (600) owners of property. There are one hundred thirty-four (134) homes occupied by year round residents of the City. The homes are valued at from $15,000.00 to $90,000.00. The assessed value thereof is $690,000.00, and the actual value is about $2,000,000.00. Great numbers of people in the area enjoy recreational facilities of the lake, consisting of swimming, boating, fishing and picnicking. Many residents of the City pump water from the lake into their homes and use it for general domestic purposes. Some drink it without any kind of treatment and many drink it after treatment by filtration or other purification. Sewage is handled by septic tanks and there has been no evidence of ill health due to the water supply.

The appellants seek authority to construct a waste stabilization lagoon on property located twenty-five hundred (2500) feet north of Highway T and twenty-eight hundred (2800) feet west of Highway 71, in Platte County, on property zoned for agricultural use. The proposed site would consist of two—two acre cells on an 11.4 acre tract of land. Each cell would serve one hundred (100) houses and, ultimately, the capacity would be raised to four hundred (400) houses by the addition of an aeration unit, and chlorination. It would serve eighty-seven (87) acres of unplotted land lying to the southeast, and forty-five (45) lots in Prairie Point Manor, lying immediately north of Missouri Highway T.

This property was originally owned by the defunct Elbel Construction Company. It was acquired by defendants through foreclosure of notes and deeds of trust executed to Arizona Savings and Loan Association by Elbel, in the sum of $565,000.00.

The record consists of three hundred fifty (350) pages, transcripted from the hearings before the Board, plus exhibits consisting of four (4) pounds of typewritten, mimeographed and printed documents, and a forty-three (43) page transcript of the *certiorari* proceeding. The Board denied the application on the first hearing but, upon motion, granted a rehearing. Some additional evidence was heard and, at the conclusion of the second hearing, the application was approved. That decision was approved by the learned Circuit Judge of Platte County.

It would make this opinion an unconscionably long document if we should set out the record in detail or discuss separately the testimony of the numerous well qualified professional witnesses who gave testimony for the respective parties. Such an opinion would probably not add materially to the accumulated legal knowledge on this subject. We will, therefore, set out the pertinent facts and issues, as gleaned from the entire record, as briefly as we may in order to dispose of this appeal on the issues presented.

The Plan Commission and the Public Health Engineering Division of Kansas City recommended approval of this application. A previous similar application had been approved by the Platte County Board of Zoning Adjustment, and by the Water Pollution Control Board. That approval was in 1958, but the permit was revoked because of the failure of the applicant, Elbel, to complete construction. Since that time the area has been incorporated into Kansas City. It was shown that the Division of Health of Missouri had surveyed the water supply of the people of Weatherby Lake and had officially reported it to be unsatisfactory from a health standpoint, for domestic use; that sewage disposal facilities were inadequate from a health standpoint; and that the lake waters were unsatisfactory for swimming purposes.

It was established that the Department of Health, of Missouri, approves the use of lagoon type sewage treatment plants, as modeled by a plant built and operated under

the supervision of the U. S. Public Health Department, at Fayette, Missouri.

There was competent engineering evidence to the effect that, subsequent to the approval of the plans submitted by Elbel, construction began and that that project was 47% completed, at a cost of $20,000.00, prior to its abandonment; that this type of lagoon, as such lagoons are *presently* designed and operated, will remove 99.9% of the Coliform (disease producing bacteria), and 85 to 90% of the organic matter; that the effect of treatment of sewage in such plants is greatly improved over what it was prior to 1962; that this plant, as designed, will not increase pollution of the waters of the lake to any greater degree than the waters are polluted as of now; that permissible loading, of people per acre of water, at the time the hearing was held, is one half what had been permissible when other lagoons in the area were constructed; that lagoon planning and performance, at this time, is far superior to that prevailing when other lagoons in the area were built; that the health department has made "on the ground" studies and has approved the site and the proposed plans for construction of this project; that aeration of the effluent, as it progresses one and three-eights (1⅜) miles down Rush Creek, before entering the lake, will further aid the process of purification and reclamation of the water, and will eliminate foam engendered by detergents.

The opinion evidence to the effect that effluent from the lagoon will not further contaminate the lake waters is based, partially, on testimony to the effect that raw sewage from five houses in the area covered by this application is entering the lake. There was testimony to the effect that these houses alone produced more pollution than would the lagoon produce when completed; but there was testimony to the effect that these houses do not produce raw sewage which goes into the lake. There was testimony to the effect that the entire drainage area is contaminated from general usage, and that effluent from a

septic tank from a high school, and from septic tanks of houses in the City of Weatherby Lake, is entering the lake waters through under-ground drainage.

There was testimony to the effect that Kansas City has established a water line to serve this area; that gas, telephone and electrical facilities are ready to be hooked on to; and that, but for the lack of sewage facilities, the area is ready for housing development. There was also evidence to the effect that its development for residential purposes is generally desirable.

For plaintiffs there was competent, credible professional testimony to the effect that, to provide lagoon sewage disposal for the entire area available for development adjacent to the area in question, it would require thirty-two (32) lagoon installations, similar to the one here considered; that all would drain into Weatherby Lake; that detergents cannot be eliminated from sewage; that they would utterly ruin the waters of Weatherby Lake; that, as a result, property values in the City of Weatherby Lake would depreciate; that, if this application is approved, the lake waters would become so contaminated as to render them unfit for human consumption, or for swimming; that fish could not live in the lake; that the waters would stink; and that the City of Weatherby Lake and its residential property would have to be abandoned.

Plaintiffs also produced evidence tending to prove that chemical analyses of water, taken in the past from the lake, had never indicated that it was unsafe for human consumption; that many residents drink it without even filtering it, and that others have their own private purification plants.

Plaintiffs offered testimony to the effect that the effluent from the "Peterson" sewage lagoon, located nearby, is malodorous, heavily impregnated with detergents, covered to a depth of several feet with foam below its outlet, and that it is, to all intents and purposes, raw sewage, and that that lagoon is similar in construction and operation to that here involved.

Plaintiffs also offered into evidence certain pictures depicting conditions shown by testimony to have prevailed below the outlet of the "Peterson" lagoon in the past. Objection to their admission was sustained.

Mr. Myers, a qualified engineer, testified for plaintiffs, in some detail, as to alternate plans for solving the sewage disposal problem of the housing to be developed on the plot here involved. He proposed a plan which he believed could be put into operation without resorting to the lagoon plan proposed by defendants, and which, he thought, was feasible from a cost standpoint. However, qualified witnesses testified on behalf of defendants to the effect that there was no other economically feasible plan for sewage disposal available at this time and that, if the lagoon plan is disapproved, the area in question must, of necessity, remain agricultural in character. The evidence was that, after the entire area is developed, trunk sewers would probably be installed, with central treatment, and that such a solution would be an improvement over the lagoon method of disposal.

A review of all of the evidence in this case indicates the wide differences in the views and opinions of the many experts in engineering, sanitation, health, water pollution, etc., who gave testimony. There was convincing evidence tending to show that the water of Weatherby Lake is and has been free of pollution to such an extent that it is potable, safe, and fit for human consumption without any treatment. Other evidence tended to prove that it is and has been for some time, unsanitary and unsafe for drinking or swimming.

There was testimony tending to prove that the effluent which would enter the lake from the lagoon would be heavily contaminated, dangerous to the health of anyone who might drink it, and that it would kill the fish in the lake; that the waters would become so malodorous and undesirable as to demoralize property values in the City of Weatherby Lake and, ultimately, cause its abandonment. On the contrary, there was competent evidence tending to prove that the effluent produced by the lagoon would contain a lesser degree of pollution than currently exists in the water of the lake.

Citizens not trained in the fields of health and sanitation, find it difficult to believe that man's ingenuity can, by lagoon sewage treatment, convert his own excrement into palatable and safe drinking water for his own consumption. Such an accomplishment was never imagined by the ancient alchemists who merely sought to transmute base metals into gold. But there is convincing evidence to that effect in this record.

The members of the Board are intelligent and successful men from various walks of life. They are experienced in evaluating evidence adduced in cases of this nature, in a fast growing city where corn fields are rapidly being converted into great housing and industrial complexes. The Board heard the evidence once and denied the application. A rehearing was granted and the evidence received at the first hearing was again considered, together with a large volume of evidence received at the second hearing. It approved the application. In Veal v. Leimkuehler, supra, 249 S.W.2d 491, the court said:

"It is the duty of the board of adjustment to find and determine the facts and in so doing to weigh the evidence presented to it. It may disregard and disbelieve evidence which in its judgment is not credible even though there is no countervailing evidence to dispute or contradict it."

We may not weigh the evidence and substitute our judgment for that of the Board.

Plaintiffs contend that the Board's order is void because beyond its jurisdiction to make, for the reason that detailed plans of the proposed lagoon plant were not attached to the application, as required by Article 11(a) 2, page 5, Rules of the Kansas City Board of Zoning Adjustment. There is no evidence in the record that such a rule exists and we cannot take judicial

notice of its existence. City of Rolla v. Rider, Mo.App., 349 S.W.2d 255, 257–258.

■ It is contended that the Board had no jurisdiction to make an order authorizing the establishment of a public nuisance. The evidence of record fails to establish that a sewage disposal lagoon is a nuisance.

■ The decision and order of the Board approving the application is supported by competent and substantial evidence on the whole record, and it could have reasonably reached its decision and made the order that it did make. It is not against the overwhelming weight of the evidence.

The judgment of the Circuit Court is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.