CARROLL CONSTRUCTION COMPANY, Respondent,

v.

KANSAS CITY, Missouri, et al., Appellants.

No. 22071.

Kansas City Court of Appeals.

Missouri.

May 2, 1955.

David M. Proctor, City Counselor, Guy W. Rice, Associate City Counselor, Kansas City, for appellants.

Daniel L. Brenner, Bernard L. Balkin, Brenner, Van Valkenburgh & Wimmell, Kansas City, for respondent.

BROADDUS, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County, reversing the decision of the Board of Zoning Adjustment of Kansas City, and arises out of the following facts.

Respondent, Carroll Construction Company, is the owner of Lots 10, 11, 12 and 13, Salisbury Place, an addition in Kansas City, Missouri. This property is at the northwest corner of 10th Street and Lydia Avenue, having a frontage of 146 feet on the north side of 10th Street and 186 feet along the west side of Lydia. It is zoned as District M-1, Light Industry, as shown by Section 58-13 of the Zoning Ordinances of Kansas City, Missouri.

On April 10, 1952, respondent made application to the Board of Zoning Adjustment for permission to use said property as a truck terminal as provided by Paragraph 41 of Section 58-13 of said zoning ordinances. Paragraph 41 is as follows:

"Terminals, truck—upon the approval by the Board of Zoning Adjustment after public notice and hearing. The Board shall give due consideration to traffic requirements of the streets on which such terminals would have access, the location and width of entrances and exits to such truck terminals and the provision of sufficient space, and open, enclosed and covered docks to allow the trucks, when loading, unloading, maneuvering and parking, to be entirely off the street.

"Prior to action in any such case, the Board shall request recommendations from the City Traffic Engineer and from the Fire Department and shall impose any additional conditions or require any additional safeguards necessary, in its opinion, to avoid creating additional fire and traffic harzards or any possibilities of additional traffic congestion."

On April 29, 1952, a hearing was held on the application. Prior to the hearing, in accordance with the requirements of ordinance, respondent's proposed building plan was submitted to the City Traffic Engineer and the Fire Department for recommendations. Both of these offices submitted their approval of the plan.

Respondent's president and its attorney both testified at the hearing. They were questioned at length by members of the Board concerning the submitted plan. It was disclosed that respondent intended to lease the property to a trucking firm. Several members of the Board then indicated that the Board could not approve the plan without a binding lease indicating who would occupy the property. One member of the Board stated that "we're going to have some more information, too * * * we need to know the scope of the operation—traffic enters into this whole lot."

Inasmuch as several persons were present for the purpose of opposing respondent's application the Board decided to hear those protests.

Miss Christine Wayland stated that she represented the East Central Improvement Club of which she was Executive Secretary; that she owns two houses on Lydia Avenue between 9th and 10th Streets; that she also spoke for Mrs. Westfall, Mrs. Forrest Fields and Mr. Williams, property owners in that block. Miss Wayland said: "I think if you gentlemen have had anything to do with Lydia Avenue, or have looked at it you'll find it is a very narrow street. When there are cars parked on both sides even a passenger car has to wait in the little lane until cars come from either direction before they can get through. That is how narrow the street is now, and parking is allowed on both sides. * * * We'd be very sorry to see a truck terminal go in there because of the maneuvering of the large trucks and I think that you realize the traffic is bad enough now * * *."

Mr. Samuel L. Payne stated that he represented the Twin City Hotel Company which owns the property known as the Parkview Hotel; "that property extends from the southeast corner of Lydia to the southwest corner of Paseo, covering the whole block, and we want to register opposition"; that a truck terminal "would cause a traffic hazard there. 10th Street is a one-way street traveling east and is a very busy street—a very dangerous street. * * * If we have maybe 30 or 40 of those trucks coming in and out of there added to what we already have it makes it very dangerous there on that corner, or even on 10th Street or Lydia."

Mr. Joseph Duffy stated that he lived at the southwest corner of 10th and Lydia; that "I have occasion to go up and down Lydia from 10th Street many times. Frequently, now the street is already blocked, and not only that, the bag company—that owns the lot opposite the Carroll property also unloads and operates big trucks there, and many times the street is blocked so we can't get by * * * Lydia is entirely too narrow."

One of the protests came from Mr. Alex Hawkinson, President of the Park Central Investment Company. This company owns a 24 apartment building at 1324–26 East 10th Street, and which is west and adjacent to the land intended to be used as a truck terminal, a narrow alley separating the two properties. Mr. Hawkinson stated that the northwest corner of 10th and Lydia is completely surrounded by residential apartment buildings and that a truck terminal would greatly damage the properties surrounding it, and particularly the apartment building of the Park Central Investment Company.

At the conclusion of the hearing the Board denied respondent's application. On May 3, 1952, respondent filed its request for a rehearing. In this request it stated that it had changed its building plan, diverting traffic away from 10th Street, the one-way street, and that a majority of the property owners in the area approved the amended plan. On May 13, 1952, respondent's request for a rehearing was granted and on May 27, 1952, a hearing was had on the modified application. It was agreed that evidence introduced at the first hearing should be considered by the Board.

Respondent's president and its attorney testified concerning the changed building plan which removed all entrances and exits on 10th Street and located them on Lydia and the alley adjoining the property. Respondent also presented a lease executed by it as lessor with the Missouri-Oklahoma Express Company as lessee. This lease was for a term of five years with a monthly rental of $1,200. Respondent offered a letter from the operation and sales manager of the Express Company stating the requirements of the Company as being four trailer transport trucks operating between 7 p. m. and 7 a. m. and six pick-up trucks operating between 9:30 a. m. and 4:30 p. m. Respondent also filed with the Board the latest traffic counts prepared by the City Traffic Engineer for the two streets involved. These traffic counts (made in 1949) showed the peak hour load on 10th Street between Lydia and Paseo to be between 4:30 and 5:30 p. m., with 1,094 cars passing during that hour, and the peak hour load on Lydia between 9th and 10th Streets to be between 7:45 and 8:45 a. m. with 46 cars passing during that hour.

Testimony was given by three landowners who owned property in the vicinity in favor of respondent's plan and respondent filed with the Board Letters from 22 other landowners also stating their approval. Most of the addresses given in these letters were on 9th Street and on Lydia south of 10th Street.

At the conclusion of the hearing the Board again denied respondent's application. And on June 24, 1952, respondent filed in the circuit court its petition for certiorari to review the order of the Board. The writ issued, and the members of the Board filed their return. The evidence presented at the trial in the circuit court consisted of the transcript of the evidence

presented to the Board and the zoning ordinances of the City.

The circuit court found that "there was no credible evidence presented at said hearing contrary to the evidence of plaintiff as to traffic requirements, effect on traffic congestion in the area, or suitability of plaintiff's proposed plan;" that the "order of the Board of Zoning Adjustment was not supported by competent and substantial evidence upon the whole record"; that "the order of the Board was contrary to the overwhelming weight of the evidence;" that "the procedure" of the Board was "illegal" because it "did not comply with the provisions of Chapter 536 of the Revised Statutes of Missouri (1949) [V.A.M.S.];" and that the Board's order "was arbitrary" and was therefore "illegal". From the judgment based on these findings the Board perfected its appeal to this court.

■ The scope of review, by a court, of the decision of an administrative tribunal has been discussed in many decisions. A brief statement of the rule is found in Wood v. Wagoner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649, where the court said:

"The provision in Section 22 that administrative decisions 'shall be subject to direct review by the courts as provided by law' refers to the method of review to be provided (certiorari, appeal, etc.) and not to the scope of the review 'in cases in which a hearing is required by law.' For the latter, this stated minimum standard ('supported by competent and substantial evidence upon the whole record') is mandatory and requires no legislation to put it into effect. This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and

to set aside decisions clearly contrary to the overwhelming weight of the evidence."

Thus the question for our decision is whether the Board could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it, or whether its decision was clearly contrary to the overwhelming weight of the evidence.

As shown above the zoning ordinance (par. 41) requires that before the Board shall give its approval for a truck terminal it "shall give due consideration to traffic requirements of the streets on which such terminal would have access." The evidence is undisputed that Lydia is a narrow street and that parking is allowed on both sides, resulting in traffic conjestion. Also, that 10th Street is a one-way street and is highly conjested by traffic.

■ It is true that respondent's evidence showed that the proposed truck terminal would be used by only four transport trucks and six pick-up trucks. However, the building plan called for "10 doors on each side." One of the members of the Board said to respondent's president: "I'm wondering why you are building as big a building as you're talking about, 10 or 12 doors on the side, if you're only going to operate 4 trucks out there, what's the sense?" Another member inquired: "You propose to ask the Board to permit this truck terminal for only four trucks?" It is apparent that the Board was not convinced that the added traffic would be as light as respondent claimed it would be if its application were approved. Under our decisions it was the right of the Board to disregard and disbelieve evidence which in its judgment was not credible even though there was no countervailing evidence to dispute or contradict it.

■ We think it was within the discretion of the Board to decide the matter as it did decide it, and that its decision is supported by substantial evidence. Certainly we cannot say that the finding is so clearly

contrary to the overwhelming weight of the evidence that we should set it aside or, in the face of all the circumstances, substitute our judgment on the evidence for that of the Board.

█ As heretofore stated, the circuit court found, at the request of respondent, that "the procedure" of the Board was "illegal" because it "did not comply with the provisions of Chapter 536 of the Revised Statutes of Missouri (1949) [V.A.M.S.]." Chapter 536 contains all of the provisions of the Administrative Procedure Act which is divided into fourteen sections. It will be noted that the court did not refer to any specific provision of the Act. The record shows that at the hearing in the circuit court respondent contended that "the order" of the Board was "illegal" because it was not accompanied by conclusions of law and findings of fact, citing Section 536.090 of said Chapter 536. However, respondent's petition filed in the circuit court raised no such issue. And furthermore, respondent did not at either hearing before the Board make any request for such conclusions and findings.

We are compelled to hold that the judgment of the circuit court must be reversed. It is so ordered.

MAUGHMER and WEIGHTMAN, Special Judges, concur.

DEW, P. J., and CAVE, J., not participating.