Elizabeth F. SUMMERS, L. B. Handley, Mrs. H. A. Frazer, Lulu F. Miller and Nellie V. Miller, George P. Whyte, Jr., and Mabel H. Whyte, Laurence Dimsdale, William Dimsdale, Theo. Dimsdale, Robert Dimsdale and Randal Kelly, Relators-Appellants,

v.

BOARD OF ZONING ADJUSTMENT OF KANSAS CITY, Missouri, Hugh R. Ennis, Chairman, and Thomas C. Bourke, David W. Childs, Clair H. Schroeder and Luther Willis, Members, Respondents,

and

Visitation Catholic Church, Intervenor-Respondent.

No. 22500.

Kansas City Court of Appeals.

Missouri.

Jan. 7, 1957.

Miller, Sheffrey & Ryder, Roger T. Hurwitz, Kansas City, for relators-appellants.

Benj. M. Powers, Guy W. Rice, Kansas City, for respondents.

Gordon & Cochrane, Norman P. Gordon, William W. Cochrane, Jr., Kansas City, for Visitation Catholic Church, intervenor-respondent.

SPERRY, Commissioner.

This is a zoning case arising under the ordinances of Kansas City.

The relators-appellants, hereinafter referred to as relators, instituted this suit to procure a review of the proceedings and order of the Board of Zoning Adjustment, hereinafter referred to as Board, whereby the Visitation Catholic Church, intervenor, was granted a permit to use certain of its property for a parking lot, under certain stated restrictions.

From a judgment affirming the order of the Board, relators appeal to this court.

Intervenor has a church and school, located on the east side of Main Street, between 51st Street and 51st Street Terrace. Diagonally across the street northwest from the church, a distance of less than 500 feet, intervenor owns a rectangular plot of ground facing Main Street, 50 feet north and south and extending west 127.5 feet to a 16 foot alley, which begins at the south line of the property and runs thence north to 51st Street. Intervenor also owns two 25 foot lots directly across the alley, extending westward 127.5 feet, to Baltimore. A house is located on one of the lots facing Baltimore but the Main Street property is vacant. This property all lies within an R 2 District, zoned for residential purposes.

The Board heard many witnesses on behalf of the respective parties. The evidence was to the effect that the Church had been located there for many years; that 700 families are parishioners; that on Sunday, between the hours of 7:00 a. m., and 1:00 p. m., some 2000 people visit the Church to attend Mass; that all do not come at the same time, that several Masses are celebrated during that time; that the Church has space for parking 25 cars at the Church site; that all other cars of parishioners must be, and are, parked on the adjoining streets during their attendance at Mass; that Main Street is a fire lane and carries heavy traffic; that parked cars add greatly to traffic congestion in that area; that all other property in the area, except that herein mentioned, is occupied by dwelling houses, and none is vacant or available to be used for parking purposes; that about 20 automobiles can be parked on the property.

There was evidence from two real estate men, one of whom owns property and lives in the immediate vicinity, to the effect that the construction of parking facilities on this property, and its use for that purpose, will not materially depreciate the values of other property in the area; that such use, limited to Sunday morning, would not materially affect the use and enjoyment of other property in the area for residential purposes; that off-street parking, as here provided, would not eliminate the congested traffic conditions due to parking on the streets, but that it would alleviate the condition to some extent.

Relators offered testimony, from a number of resident property owners, to the effect that virtually all resident owners are opposed to the establishment of the facility; that it would result in causing much noise, dust and confusion; that it would be unsightly in a residential area; that it would cause the values of neighboring property to be depreciated; and that it would injure and damage the use of other property, for residential purposes, while doing but little to eliminate parking on the streets.

A plat, shown in evidence, discloses that 51st Street Terrace extends, from the east, only to Main Street, that it does not extend on through to Baltimore; that the property here under consideration is bounded on the east by Main Street, and on the west by Baltimore; that the first cross street, to the north, is 51st Street, and the first to the south is 52nd Street; and that the alley does not run south from intervenor's south line.

The evidence was to the effect that the city does not claim the alley and refuses to maintain it; that abutting property owners maintain same for their convenience in bringing in supplies and carrying away waste; that intervenor does not plan to use the alley for ingress or egress to its parking facilities, but will use presently existing ramps leading therefrom to Main and Baltimore; that intervenor will, if permitted, block off said alley at their north property line, so as to prevent its use by people using the parking facilities; that it is planned to hard surface the land, and to build a suitable wall, some 3½ to 4 feet in height, set well back from Main and Baltimore, and set back also from property lines on the north and south, so as to protect the use of the streets by others, and to protect the other property from danger from cars on the lot, while being moved, and from the annoyance of lights, etc.; and that the grade of the land will not be changed.

After a full public hearing the Board made the following findings of fact and conclusions of law, although not requested to make any findings:

"Finding of Fact:

"1. The Board has the legal authority to act in this matter under Section 58–23.

"2. There is extreme need for parking in this vicinity.

"3. There is inadequate off-street parking space at the present time.

"4. Under the testimony the value of the surrounding property will not be materially affected.

"Conclusions of Law:

"Sections 58–23 and 58–25 authorizes the Board to act in this matter."

The permit, as granted, required that the lot be "hard surfaced, surrounded by a wall not less than 3½ feet in height and that it set back from Main Street 30 feet and from Baltimore 20 feet, and 6 feet from the north and south property lines. This parking lot shall be kept locked entirely on week days and open only on Sundays from 5:00 a. m., to 1:00 p. m."

Relators contend that the Board exceeded its authority in granting the permit. The ordinances governing this case is sections 58–23 and 58–25 of chapter 58, of the Zoning Ordinance of Kansas City. The applicable portions of such sections provide as follows:

"Section 58–25, Powers and Duties of the Board of Zoning Adjustment.

"2. Subject to the above paragraph 1, the Board of Zoning Adjustment may, in specific cases, after due public notice and hearing, and subject to such conditions and safeguards as will protect the appropriate use of neighboring property, determine and vary the application of the use district regulations herein established in harmony with the general purposes and intent of such regulations as follows:

"B. Permit in any district any use not heretofore enumerated which is in general keeping with the uses authorized in such districts.

"Section 58–23, Off-Street Parking and Loading Regulations.

"Existing buildings or structures may provide off-street parking, but must comply with the requirements of this Section as to the location and construction of the parking space for such type of structure. However, the full compliance with the number of spaces required need not be fulfilled. * * *

"Parking For Places of Public Assembly:

"1. Except in a C-4 district, for every structure or part thereof hereafter erected, or for any building converted to such use or occupancy to be used principally as a place of public assembly or for any addition thereto, there shall be provided and maintained on the premises accessible off-street parking space for the storage of passenger motor vehicles, as indicated below. * * *

"Exceptions.

"3. The Board of Zoning Adjustment may vary, waive, or make an exception to any of these requirements after a public hearing, if undue hardship in complying with any of the above provisions is shown. In passing upon a variance or exception, the Board shall be limited to the following conditions:

"A. That the proposed location of the parking facilities shall be within the same block as the structure to be used for public assembly, or on the opposite side of the street or alley from the building sites, and within the nearest intersection streets, except in a C-3 district and in the industrial districts, where it shall be within one thousand feet, on premises zoned for business or industry.

"B. That the distance from the nearest point of the building site to the nearest point of the parking facilities is less than five hundred feet, except in a C-3 district and in the industrial districts.

"C. That the location of the parking facilities will not unduly adversely

effect the use of the neighboring property.

"D. That all the conditions pertaining to the development of a customer parking lot as provided in Paragraph 2-E Section 58–25, be fulfilled except in business and industrial districts."

■ Relators contend that the Board had no legal authority to act because there was no showing of undue hardship in complying with the controlling ordinances. That contention must be denied because the ordinance provides that existing buildings, such as a church, may provide off-street parking under certain conditions.

■ But, the ordinances do provide that, in providing such off-street parking, requirements as to location and construction must be complied with. Relators contend that the location of intervenor's lot is not within the limitations set by ordinance because it is not within the intersecting streets nearest the church. We think there is substantial compliance in that regard. The lot is across the street from the church, which is permissible. It is within 500 feet of the church. And it is within the nearest intersecting streets of the area in which it is located, to-wit: 51st and 52nd and Main, and Baltimore. Relators contend that 51st Street Terrace is the nearest intersecting street; but it does not go through the block in which the proposed parking lot is located. To hold that it is an intersecting street, within the meaning of the ordinance, would be an unnatural and strained construction, not a reasonable construction. We are not here construing a statute dealing with the regulation of motor vehicle traffic. Decisions dealing with such statutes are not persuasive.

■ It is next urged that error was committed because there was no finding to the effect that establishment of the parking facility would have no material adverse effect on the "use" of surrounding property. Neither party requested the Board to make a finding on that issue. Therefore, failure to *make* such a finding is not error. Carroll Construction Company v. Kansas City, Mo.App., 278 S.W.2d 817, 821. However, there was ample evidence before the Board from which it could have found that fact, particularly in view of the limited use to be made of the facility. The fact that there was also evidence from which the Board could have found the contrary is not material because the court may not substitute its judgment on the facts for that of the Board. Carroll Construction Company v. Kansas City, supra, 820.

■ It is urged that the Board was not authorized to act in this case, under the variance provisions of the ordinances. We think that there was strong evidence of the necessity and desirability of off-street parking for intervenor, in the interests of intervenor's parishioners as well as the public generally. The evidence was to the effect that no other plot of ground in that geographical area was available, all of it being occupied by buildings. Under the powers given the Board, where strict compliance would be a hardship on intervenor, as the evidence here indicates it would have been, it was empowered to vary the strict requirements of the ordinance to the extent that it did so in order to authorize the action taken.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

CAVE and BROADDUS, JJ., and MAUGHMER, J., sitting as Special Judge by order of the Supreme Court, concur.