**Helen ISGRIGG, Appellant,**

v.

**BOARD OF TRUSTEES OF POLICEMEN'S AND FIREMEN'S PENSION BOARD OF JOPLIN, Missouri, Respondent.**

No. 24285.

Kansas City Court of Appeals.
Missouri.

Feb. 7, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 4, 1966.

Louis Wagner, Kansas City, for appellant.

Wm. H. Burden, City Atty., Joplin, for respondent.

BROADDUS, Special Commissioner.

This case arises as a result of a petition filed by Helen Isgrigg in the Circuit Court of Cole County in which she sought a review of a decision of the Board of Trustees of the Policemen's and Firemen's Pension Board of the City of Joplin, denying her application for death benefits as the widow of Roy E. Isgrigg, deceased, under the provisions of Ordinance 19655 of said City. After a hearing the Circuit Court affirmed

the decision of the Board and this appeal followed.

For many years prior to his death on March 2, 1962, Roy E. Isgrigg was the Chief of Police of the City of Joplin.

Section 11 of the Ordinance specifically provided that among the "members covered" was the "Chief of Police." And section 17 provided that if any member "shall suffer a personal injury by accident arising out of and in the course of his employment * * * and shall by reason thereof be disabled and prevented from performing his duties * * * he shall be entitled to disability benefits * * *", and "that illness due to unusual or extraordinary exposure to weather conditions or other hazards as an incident to his duties and to an extent beyond that to which the general public is subject shall be deemed to be an accidental injury within the meaning of the term 'personal injury by accident.' "

Section 21 of said Ordinance contained the provision that if any member should "die as a result of personal injury by accident arising out of and in the course of his employment" his widow would be entitled to certain death benefits.

The evidence before the Board disclosed that during the months of March and April, 1961, while in the scope of his employment and as an incident to the performance of the duties required of him Mr. Isgrigg was subjected to exposure to severe rain, hail, ice and sleet storms beyond that to which the general public was subjected. This exposure caused him to develop an acute respiratory infection. At the time x-ray and fluoroscopic examination of his chest proved to be negative. His condition became worse, and on July 15, 1961, he was admitted to Barnes Hospital in St. Louis, Missouri. Then, and not until then did examination reveal that he had cancer of the right lung, and that he had this condition prior to the exposure. His condition was then inoperable, his chest was explored and closed.

Dr. John Koehler testified that he had been the treating physician of Mr. Isgrigg for a number of years; that he was a graduate of Washington University School of Medicine in St. Louis; that he specialized in internal medicine; that he had three years of post-graduate training at the St. Louis City Hospital; that he was a consulting physician of Camp Crowder and at the Missouri State Sanitarium for diseases of the chest; that he was a member of the Missouri Medical Association, the American Medical Association, the Southern Medical Association and American Society of Internal Medicine; that he had training in the diagnosis of cancer. The first time he found any serious physical condition of Mr. Isgrigg was on July 11, 1961. Isgrigg reported that while the doctor was on vacation, three or four weeks prior to July 11, he had developed the flu or an upper respiratory infection causing a lot of coughing; that he had seen a Dr. Schulte who had given him an antibiotic. At the time of the conversation, he still had a severe racking cough which was keeping him from resting at night. He came to the office that day, and x-rays were taken of his chest which showed evidence of a tumor of the lung. He was then advised to go to Barnes Hospital for visits and possible treatments of the tumor. The doctor made arrangements for his entry there. He received some reports from the doctors there when Isgrigg came back. The diagnosis at Barnes was carcinoma of the lung. Witness' findings concurred with the findings at Barnes Hospital. The doctor was of the opinion that exposure of Mr. Isgrigg to rain and other elements for a period of time from the 1st day of March, 1961 to the 28th day of June, 1961, did not alone cause carcinoma of the lung, or would not have caused his death and terminal disease.

In explanation of a letter (Exhibit 4) signed by Dr. Koehler, he stated in essence that as a result of exposure, Isgrigg developed an upper respiratory infection which caused him to have a cough and so forth, and initiated the symptoms which

caused his initial hospitalization. He did not say that it caused his death and did not infer that it caused the cancer. Witness further stated "as far as I can tell from any medical opinion that I of myself know or have read, because of this problem, in my opinion, this could not have caused the cancer." In answer as to whether or not Isgrigg had a cancer before he was out in the elements, or whether witness suspected that he may have had it, he stated that one year before, he had a normal chest x-ray; that there was a tumor on x-ray on the 11th day of July; that lung cancer cannot grow in a period of one or two months to the size that it was because when he was sent to St. Louis and underwent an exploratory operation, he was already inoperable so that the cancer could not in his opinion have followed the exposure. The exposure did call our attention to his chest. It did set off the infection, or help to set off the infection which in turn caused the symptoms which made us check his chest. The doctor stated that the tumor was probably there as early as January.

In answer to the following questions propounded to witness by claimant's attorney, the doctor made the following answers:

Q. Assuming doctor, that prior to May, 1961, Roy Isgrigg had periodical checkups consisting of chest x-ray, a complete physical examination and laboratory tests, and that the clinical findings were negative, and that prior to May, 1961, he was exposed to unusual and extraordinary weather hazards in the line of duty beyond that which the public is subjected, and that as a result thereof developed and acute upper respiratory infection with an acute bronchitis: Would such exposure tend to aggravate a pre-existing latent cancerous condition which hastened his hospitalization in July, 1961?

A. I have to answer it with qualifications. The upper respiratory infection in my opinion in all probability was caused by his exposure to the elements. This in turn did cause him to have bronchitis, and this in turn, did cause him to come in due time to hospitalization more quickly than he would have come if he had not had this exposure. That is correct.

Q. Would you say, then, it aggravated a pre-existing condition?

A. This in the part I wanted to finish saying and that is, that from my knowledge of cancer, I cannot believe that this did cause, or aggravate I should say, the cancer itself. It aggravated his overall condition. It caused him to go to the hospital, but this was a temporary aggravation. The acute bronchitis in due time cleared up, but then, we were left with the tumor. The tumor, which in my opinion, pre-existed this problem.

\*  \*  \*  \*  \*  \*

Q. No, what you said about infection.

A. Well, now, I don't believe—at least, I didn't mean to say this in the way that you understood it. In my opinion, this infection did not infect or set off the cancer. This infection bothered or affected his bronchial tubes, his lung, and did cause him to have a systemic response as a result, but it was not a direct aggravation to the tumor. I don't believe it was causative to the tumor and I do not believe it would hasten the growth of a tumor.

Witness further testified that the bronchitis condition weakened him for a short period of time.

Q. Now, wouldn't an individual in a weakened condition as he was, exposed to the elements and suffering from bronchitis, be more susceptible to an aggravation if there was an aggravation, than a well person?

A. If you are talking about aggravation of tumor, this I can't accept. If you are talking about an aggravation of pre-existing infection or terminal illness at the termination, at the point where this individual is near death, then I would

say at this time it may have hastened his death. But, early, this early in the disease, when he had been active and when he did have a complete clearing of his bronchial infection as far as what can be related to this exposure, I cannot say there was an aggravation of the pre-existing, as you say, "latent condition."

Appellant contends that the court erred in affirming the order and decision of the Board on the finding that there was substantial and competent evidence to support the order.

■ There is no controversy as to whether or not claimant's decedent became ill as a result of his exposure to the elements. The evidence was that he did develop the flu or an upper respiratory condition referred to as bronchitis some time prior to the 30th day of April, 1961, at which time he laid off from work, received his first medical attention and remained in bed for a period of two weeks. Neither is there any controversy that petitioner's decedent died of lung cancer. The decision of the Board turned on whether or not the exposure and resulting illness caused his death. This is clearly manifested by questions asked Dr. Koehler by the various members of the Board. The only competent medical evidence submitted to the Board on the question of causation was the testimony of Dr. Koehler who had been decedent's family physician for a period of many years and knew more about his physical condition than any other person. Dr. Koehler testified that in his opinion, the lung cancer was not caused or aggravated by decedent's exposure to the weather during the period of time from March 1, 1961 to June 28, 1961. He stated that the tumor probably had its inception in January of that year; that an x-ray taken a year before the x-ray taken on July 11, 1961, did not show any evidence of tumor. There was no medical evidence presented to the Board by the claimant that claimant's decedent's death was caused by his exposure to the elements. On the contrary, the doctor testified that the bronchial

or upper respiratory condition had completely cleared up; that this condition did cause him to have the x-ray made on July 11 which did disclose the tumor and did result in him being sent to Barnes Hospital in St. Louis where an exploratory examination of his chest disclosed his condition to be so far advanced that it was inoperable. The Board's decision was supported by competent and substantial evidence. The evidence does not show in any respect that the Board in arriving at this decision was arbitrary, capricious or unreasonable or that it abused its discretion. Its interest in determining causation was clearly demonstrated by the number and type of questions asked Dr. Koehler by various members of the Board.

Appellant argues that the order of the Board was unlawful because the Board made no findings of fact nor conclusions of law, citing Sect. 536.090 V.A.M.S. The order and decision of the Board stated:

" * * * and having given full and careful consideration to all the evidence does find that neither the said Roy E. Isgrigg, nor his widow, Mrs. Roy E. Isgrigg are eligible for benefits under Section 21, Ordinance 19655."

■ Appellant's petition for review presented to the Circuit Court did not assert that the order of the Board was "unlawful" because it was not accompanied by conclusions of law and findings of fact. Furthermore, appellant did not at the hearing before the Board make any request for such conclusions and findings. Thus she is in no position to now complain. Carroll Construction Co. v. Kansas City, Mo.App., 278 S.W.2d 817.

The case of Bergman v. Board of Trustees, Mo.Sup., 386 S.W.2d 49, cited by appellant is clearly distinguishable from the instant case. In that case the court stated from the meager record before it the court could not determine what law was applicable to appellant's claim, that is, whether it was that set forth in the statutes or that contained in the ordinance and it could not

"determine what law was applied to what facts by the Board of Trustees." This is not the situation here.

The judgment should be affirmed. Your Special Commissioner so recommends.

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court, and the judgment is affirmed.

CROSS, P. J., and HOWARD, J., concur; BLAIR, J., not participating.