Harold E. WAECKERLE et al., Relators-Respondents,

v.

BOARD OF ZONING ADJUSTMENT et al., Respondents,

Richard L. Eaton, Intervenor-Appellant.

No. KCD 27085.

Missouri Court of Appeals, Kansas City District.

June 2, 1975.

Motion for Rehearing and/or Transfer Denied July 7, 1975.
Application to Transfer Denied Sept. 8, 1975.

Herbert C. Hoffman, Kansas City, for intervenor-appellant.

Aaron A. Wilson, City Atty., James C. Bowers, Jr., Asst. City Atty., Kansas City, for respondents.

Don M. Jackson, Jackson & Sherman, Kansas City, for relators-respondents.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal by Richard L. Eaton[1] from judgment quashing order of Board of Zon-

1. Respondents Board of Adjustment et al., have filed a brief by which they seek rever- sal of the judgment. The brief is thus an appellants' brief; and the Board has no

ing Adjustment of Kansas City, Missouri, approving application of Richard L. Eaton for a conditional use permit for construction of a funeral home in a residential area.

On November 3, 1972, Richard L. Eaton filed an application under the Zoning Ordinance, Chapter 65, Revised Ordinances of Kansas City, Missouri, with the Board of Zoning Adjustment of Kansas City for a conditional use permit for an unlimited time to construct and operate a funeral home on a tract in Zoning District R–1a located at the southeast corner of Bannister Road and State Line Road in Kansas City, Missouri.

Section 65.040, *supra*, provides:

"A district R–1 is composed of areas developed for single-family residences and areas of open land that might reasonably be developed similarly. Uses in the district include churches, schools, community centers, and other structures and lands used for appropriate public and semipublic community facilities, and also utility substations, and other essential public uses of land whose role in the residential neighborhood and community require their location within it."

Section 65.041, *supra,* specifies the "authorized uses" in R–1 districts. It also provides for "conditional uses" in R–1 districts, together with the requirements and standards for the granting of permits for conditional uses, viz.:

"V. Conditional uses of land authorized by the Board of Zoning Adjustment on report and recommendation by the Director of the City Planning Department, subject to the conditions and restrictions of this subsection.

"A. Board hearing after report and recommendation of the Director of the City Planning Department.

"The uses of land permitted in this subsection may be authorized by the Board after a public hearing and only after receiving the report and recommendations of the Director of the City Planning Department. The Director shall report as to whether or not any use to be permitted under this subsection is compatible with the plan for the development of the City used as a guide by the commission in all such matters referred to it. After a review of the plans, the Director may make recommendations for additional conditions on the period of the permit and the method of operations. * * *

"B. Conditions applicable.

"The Board shall find that any use permitted under this subsection meets all of the conditions and requirements as follows:

"1. The use does not materially damage or curtail the appropriate use of neighboring property;

"2. The use conforms to the applicable district regulations;

"3. The use is compatible with the general character of the district;

"4. The use does not jeopardize the public health, safety or welfare; and

"5. The use does not violate the general spirit and intent of the Zoning Ordinance and this section.

"C. Uses conditionally authorized:

\*     \*     \*     \*     \*     \*

"2. Uses permitted for an unlimited time.

\*     \*     \*     \*     \*     \*

"i. Funeral homes or mortuaries, subject to meeting all of the additional conditions, as follows:

"(1) The property shall consist of not less than five (5) acres of land in a single tract

standing to file such brief because it took no appeal and time has long since passed for it to do so. Leave to file such brief as a brief of *amicus curiae* has been previously denied by order of the court. Relators-respondents' motion to quash said brief is sustained. Rule 81.04, V.A.M.R.

OR parcel not intersected or divided by any street, alley or property belonging to any other owners. The property shall have at least a 500-foot frontage on a major thoroughfare.

"(2) The entrance and exit to the parkway shall be directly to and from a major thoroughfare or parkway.

"(3) Parking space shall be provided as set forth for funeral homes under Section 65.280.

"(4) Definite and detailed plans for shrubbery and landscaping shall be presented to the Board and made part of the permit. Such landscape plan shall provide for boundary screen planting of a minimum width of 20 feet and a height adequate to provide a protective screen for the adjoining residential uses.

"(5) No principal building or accessory building shall be within one hundred (100) feet of the boundary of an adjoining property which is located in an R–1 to C–1 district, inclusive. No driveway or parking area shall be within twenty-five (25) feet of the boundary of an adjoining property which is located in an R–1 to R–5 district, inclusive."

Section 65.210, *supra,* provides identically in dealing generally with conditional uses in the various zoning districts of the city.

The application was heard by the Board of Zoning Adjustment November 28, 1972, at which time the applicable provisions of law and various exhibits were made a part of the record.

The application was made originally by Richard L. Eaton who had acquired an option to purchase the land in question on behalf of Kansas City Railroad Restaurant Corporation which had an agreement with the Mellody-McGilley-Eylar Funeral Home for an exchange of property to it for use as a funeral home conditioned upon approval by the Board of Zoning Adjustment for conditional use of the property for construction and operation of a funeral home.

The "report and recommendation" required of the Director of the City Planning Department by Section 65.041 V, *supra,* was made by letter of November 24, 1972, by Donald R. Woodward. It recited: "The principal difficulty in this application is that the area is about an acre less than the five acre minimum." Mr. Richard E. Duncan, Chief of Current Planning, testified also to this deficiency.

Upon question from the acting chairman of the board, counsel for the applicant admitted that applicant's own computations, including portions of the tract in the street, showed approximately 4.47 acres, and agreed also that the requirement is of a net of five acres. Applicant, by letter of December 1, 1972, further stated: "The usable area, not in streets is well over 4 acres and is more than adequate for use for which the permit is sought even with 8/10ths of an acre less than 5 acres." This concession was carried forward in his petition to intervene in that "Intervenor admits said tracts of land, considered as a unit, are less than five acres, and affirmatively state[s] that the area of land involved and required to be conveyed to Intervenor is approximately 4.68075 acres * * *."

In this state of the record counsel for applicant and the applicant asserted that the Board could grant a "variance" from the five-acre minimum on the theory of hardship in locating a tract which met the requirements for a conditional use permit for a funeral home. No such petition was before the Board at the public hearing.

The power of the Board of Zoning Adjustment to vary or modify application of requirements regarding use of land is, as recognized in intervenor's answer, *infra,* contained in Section 89.090, V.A.M.S.:

"1. The board of adjustment shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforce-

ment of these sections or of any ordinance adopted pursuant thereto;

"(2) To hear and decide all matters referred to it or upon which it is required to pass under such ordinance;

"(3) In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done."

The City of Kansas City has accepted this delegation of authority by providing in Article XIV, Section 403, of its charter for a Board of Zoning Adjustment and providing further:

"Subject to the provisions of state statute relating thereto, said Board shall have power to determine and vary the application of the regulations, restrictions, prohibitions and limitations contained in any zoning ordinance * * *."

The city has specifically delineated this power in the language of Section 89.090, V.A.M.S., *supra*, by enactment of Section 65.300 of its zoning ordinance to provide:

"1. The board of zoning adjustment shall have the following powers:

"a. To hear and decide all matters referred to it or upon which it is required to pass under this chapter.

"b. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the commissioner of buildings and inspections in the enforcement of this chapter."

"c. In passing upon appeals from decisions of the commissioner of buildings and inspections, whenever in any specific case, the board shall find and determine that the

application of a general rule or regulation governing the use, construction or alteration of buildings or structures or the use of land, to the particular case under consideration, will, by reason of exceptional circumstances or surroundings, constitute a practical difficulty or unnecessary hardship * * *, the board may make an order varying or modifying such rule or regulation."

The remainder of applicant's evidence at the hearing was devoted to design, construction, and use of the property, traffic conditions in the area, and the difficulty of Mr. McGilley on behalf of his funeral home in locating a tract which would meet the requirements of the ordinance.

A number of area residents appeared in opposition to the application.

The matter was taken under advisement and, on February 13, 1973, the Board of Zoning Adjustment, without reference to the failure to meet the 5-acre minimum requirement of the ordinance, either by statement of computation or by grant of variance, approved the application in question.

On March 14, 1973, relators, as aggrieved parties owning property abutting or in the immediate vicinity of subject premises, petitioned for a writ of certiorari, pursuant to Section 89.110, V.A.M.S., alleging that the order of the Board of Zoning Adjustment approving the application of Richard L. Eaton for the conditional use in question was illegal "for the reason that it is in direct contravention and violation of the mandatory and minimum requirements for such conditional uses set forth in subsection VC2(i) of Section 65.041, Revised Ordinances of Kansas City * * * in that the undisputed evidence presented in said hearing conclusively established that the total area of the property included within said application was less that [sic] five (5) acres; that the Board is and was totally without power and authority to grant approval for such conditional use in any circumstances when

said property was established as containing less than said minimum of five (5) acres * * * that the action of the Board cannot be supported or sustained on the ground either of hardship or as another discretionary finding or determination, for the reason that the terms and provisions of subsection VC2(i) of Section 65.041 are mandatory and do not authorize, justify or support the approval of this application, when the undisputed evidence established that the total area of the property included therein was and is less than the mandatory minimum of five (5) acres."

On March 14, 1973, relator's petition was sustained, and a writ of certiorari issued to the Board of Zoning Adjustment returnable April 13, 1974.

On April 12, 1973, Richard L. Eaton moved to intervene, and on April 13, 1973, his motion was sustained to permit him to intervene as a party defendant.

On April 13, 1973, intervenor filed answer admitting the tract in question was less than five acres, and alleging the Board's order was sustainable as a variance granted pursuant to Section 89.090, V.A.M.S., on the ground of hardship.

The Board of Zoning Adjustment filed answer in the nature of a general denial. The Board did not support its approval of the application for conditional use permit as a variance.

The court reviewed the transcript of proceedings before the Board of Zoning Adjustment and found:

"(a) Intervenor Richard L. Eaton applied to the Board of Zoning Adjustment for a permit for a conditional use of a tract of land on the southeast corner of Bannister Road (95th Street) and State Line Road in Kansas City, Jackson County, Missouri, for the purpose of erecting a funeral home thereon.

"(b) The area in question was and is a residential area with a zoning designation of R–1 for single family dwellings.

"(c) Application for the conditional use was made under the provisions of Section 65.210 of Chapter 65, Zoning Ordinances of the City of Kansas City, Missouri and, particularly, under the provisions of Section 65.210 II–B(2)(d) specifically relating to funeral homes or mortuaries in R–1 Districts.

"(d) A similar conditional use is also provided under Section 65.041 of the Revised Ordinances of Kansas City, Missouri.

"(e) The provisions of each of the aforesaid Sections of the Zoning Ordinances of Kansas City, Missouri, provide, as the first condition, that the property to be affected shall consist of 'not less than five (5) acres of land in a single tract'.

"(f) The tract in question, by all of the evidence in the record, is substantially less that [sic] five (5) acres."

The court concluded as a matter of law:

"(a) There has been no compliance with the primary conditional use imposed by each of the ordinance sections cited in the record and herein.

"(b) The Board of Zoning Adjustment, Respondent herein, neither had nor has discretion to waive, modify or vary the specific requirements of the Zoning Ordinances regarding the size of the tract for which the permit issued herein was sought.

"(c) The action of the Board of Zoning Adjustment in granting a permit for the conditional use of establishing a funeral home or mortuary on the tract of land mentioned in evidence was in excess of the authority of said Board of Zoning Adjustment and was and is unlawful and arbitrary."

Pursuant to these findings, the court quashed the order of the board approving application of Richard L. Eaton for the conditional use permit in question.

Intervenor-appellant asserts the court erred in failing to affirm the order of the Board of Zoning Adjustment.

Appellant contends (I) that the Kansas City Zoning Ordinance, in harmony with the Zoning Enabling Act and the City Charter, authorized the Board to make an area variance upon proof of a practical difficulty or an unnecessary hardship by way of enforcing the strict 5-acre condition for a funeral home use in an R–1 residential district. In support of this contention, he asserts that the Board may make an area variance in the requirements of any Kansas City ordinance including Sections 65.041, 65.210, and 65.300, Revised Ordinances of Kansas City; that Section 65.300 complies with and adopts and embodies all provisions of Section 89.090, V.A.M.S., giving the Board full power to vary an ordinance, whether on direct application or in passing upon appeals; that the Board's discretionary power to vary any ordinance is also recognized by Kansas City's Charter, particularly in its Article XIV, Section 403; that the court disregarded the law in declaring as a matter of law that in issuing the conditional funeral home use permit, the Board's action was in excess of its authority and unlawful and arbitrary without determining if such action was supported by competent and substantial evidence under Article V, Section 22, Constitution of Missouri, V.A.M.S.

Appellant contends (II) that the Board acted within its authority and that its action was reasonable and supported by competent and substantial evidence on the record. In support, he asserts that an area variance in this case was supported by such evidence; that the question of hardship is a question of fact within the discretion of the Board and its resolution of such question is reasonable and supported by competent and substantial evidence; that the action of the Board is conclusive because it is not contrary to the overwhelming weight of the evidence, is reasonable and required substantial compliance.

Appellant contends (III) that the court erred in declaring the Board exceeded its authority, and its action was arbitrary and capricious and should be reversed to affirm the order of the Board.

█ Appellant's contentions and assertions of their support have been stated in detail because they demonstrate that he seeks to sustain the action of the Board of Zoning Adjustment on the theory that the Board granted him a variance in approving his application for a conditional use permit; that the competent and substantial evidence on the record supports a grant of variance in relief from practical hardship, and that the court, therefore, erred in quashing the order of the Board.

Appellant's theory fails because it is contrary to the record in this case. By his own admission, "appellant sought a conditional use permit for the operation of a funeral home in an R–1a, single family residential district upon the assumption that the tract he had assembled consisted of five acres." His application to the Board of Zoning Adjustment is consistent with the foregoing admission, and the public hearing was accorded on such application. The first mention of "variance" came from counsel for applicant when confronted with applicant's admission that the tract contained less than five acres. Counsel stated only "that the Board has the power to vary this and modify it * * *," and neither he nor the applicant made any move to change the application for purposes of seeking a variance. Applicant's letter of December 1, 1972, stated that "Under my interpretation, there is no need for a variance * * *. If the granting of a variance is deemed necessary, then our request should be granted on grounds of hardship because I have searched for a site that would qualify for many months * * *." The date of this letter shows that it was not before the Board at the public hearing November 28, 1972. Neither does it purport to be a request for a variance. It is, rather, an assertion of a ground for granting the original and only request in this case. Finally, the Board of Zoning Adjustment made no find-

ings with respect to hardship upon which to base a variance, or of variance generally, or variance of the five-acre minimum in particular. It simply terminated the matter by saying "application approved."

Since there was no application for a variance, no presentation of a variance at the public hearing, and no finding or decision granting a variance, it may not be said that the court erred in failing to affirm the order of the Board of Zoning Adjustment on the theory of a requested, proved, and authorized variance. *Tustin Heights Assn. v. Board of Supervisors,* 170 Cal.App.2d 619, 339 P.2d 914 (1959).

Assuming the presence of a requested, supported and approved variance, appellant's theory is in equal difficulty under the applicable provisions of law.

■ Sections 65.041 and 65.210, *supra,* both provide, among other restrictions, that in order to obtain a conditional use permit for construction and operation of a funeral home in an R-1 single-family residential district, the land upon which it would be located "shall consist of not less than five (5) acres of land in a single tract or parcel not intersected or divided by any street, alley or property belonging to any others." Application for such conditional use permit must be presented directly to the Board of Zoning Adjustment, and the Board is authorized to grant the application only after a public hearing and upon a showing which permits a finding that the proposed use "meets all of the conditions and requirements" including the minimum size of the tract of five acres. The use of "shall" makes the requirement mandatory as opposed to discretionary or permissive. *Sho-Me Power Corp. v. City of Mountain Grove,* 467 S.W.2d 109, 112 (Mo.App.1971); Black's Law Dictionary, 4th Edition.

■ The use of "shall" in these circumstances excludes any idea of discretion; and it is only where the Board of Zoning Adjustment has exercised discretionary power

conferred upon it by other enabling statutes or provisions of the Zoning Ordinance that a circuit court is powerless to interfere with the exercise of a discretionary power which is supported by competent and substantial evidence. Since the Board had no discretion to vary or modify the mandatory requirement that the tract contain a minimum of five acres, the Board's action which was contrary to such requirement was illegal, and the court had the power and duty to set such a ruling aside. § 89.110, V.A. M.S.; *Phillips v. Board of Adjustment,* 308 S.W.2d 765, 767 (Mo.App.1958); *McKinney v. Board of Zoning Adjust. of Kansas City,* 308 S.W.2d 320, 322 (Mo.App.1957); *State v. Kansas City,* 325 Mo. 95, 27 S.W.2d 1030 (banc 1930).

■ Appellant's contention that the Board of Zoning Adjustment has the discretionary power to grant a variance in relief from the mandatory minimum acreage requirement under Article XIV, Section 40, Charter of Kansas City, Section 89.090, V.A. M.S., and Section 65.300, Revised Ordinance of Kansas City, confuses the limitations placed upon the powers of the Board of Zoning Adjustment when passing on an application for a conditional use permit and its powers in passing on appeals from subordinate zoning officials, and is contrary to those provisions.

Section 89.090, V.A.M.S., as the enabling act, authorizes a board of zoning adjustment to hear and decide appeals from decisions of subordinate administrative zoning officials, to hear and decide in the first instance matters referred to it by a zoning ordinance, and provides that when it acts in its appellate capacity, it may vary or modify applications of regulations in relief of practical difficulties or unnecessary hardship.

Article XIV, Section 403, *supra,* is a charter enactment by which the City of Kansas City accepted the delegation of authority granted it by Section 89.090, V.A.M.S., and

it provides generally, "subject to the provisions of the state statute relating thereto," that the Board of Zoning Adjustment shall have the power to determine and vary applications of regulations, restriction, prohibition, and limitation in the City's zoning ordinance.

Section 65.300, *supra,* gives definition to the charter power, and, in so doing, uses the language and specificity of Section 89.090, V.A.M.S.

In this scheme, the application for a conditional use permit to construct and operate a funeral home in a residential district goes at the outset to the Board of Zoning Adjustment rather than to any subordinate zoning enforcement officer. § 89.090, subd. 1(2), V.A.M.S., *supra* ; § 65.300.1(a), *supra.* There can be no decision by a subordinate zoning enforcement officer referable by appeal to the Board of Zoning Adjustment under Sections 89.090, subd. 1(1), V.A.M.S., and 65.300.1(b), *supra.* As a consequence, the Board could not have exercised its discretionary power of variance in this matter under Section 89.090, subd. 1(3), V.A.M.S., and 65.300.1(c), *supra.* See *Lake George Corp. v. Standing,* 211 Va. 733, 180 S.E.2d 522 (1971), where a code section similar to Section 89.090, V.A.M.S., and Section 65.-300, *supra,* giving board of zoning appeals power to authorize "upon appeal in specific cases" variance from terms of ordinance as would not be contrary to public interest on basis of hardship, gave board jurisdiction to grant variance only on appeal from prior decision of zoning officer and did not confer upon board original jurisdiction to entertain appeal from terms of zoning ordinance.

■ Interwoven in this scheme is the distinction between a conditional use and a variance. Conditional uses are exceptions to provisions for general use of properties within a particular classification. Hardship is not a prerequisite to issuance of a conditional use permit, while the essential requirement of a variance is a showing of hardship. They are not one and the same,

and provisions for each of them are not to be construed together as reciprocal parts of an integrated ordinance unless the particular act in question specifically and unequivocally so provides. *Tustin Heights Assn. v. Board of Supervisors, supra,* 339 P.2d l.c. 919; *Schultz v. Board of Adjustment of Pottawattamie Co.,* 258 Iowa 804, 139 N.W.2d 448, 450 (1966). As previously demonstrated, the applicable provisions of charter, statute, and ordinance do not recognize conditional use and variance reciprocally. To permit the Board of Zoning Adjustment to engraft a variance upon a mandatory requirement for a conditional use without specific and unequivocal authority to do so would amount to permitting the Board to exercise legislative power. Such power was expressly denied in *State v. Kansas City, supra,* 27 S.W.2d l.c. 1032, viz.: "The board of zoning appeals is intrusted with the duty of enforcing the provisions of the ordinance; it is an administrative body, without a vestige of legislative power. It cannot therefore modify, amend, or repeal what the ordinance itself designates as its 'general rules and regulations'; the power to do that is conferred upon the common council of Kansas City, and it can delegate no part of that power."

Appellant's citations may be generally distinguished as involving situations in which there was an appeal to the board of zoning adjustment from the action of the building commissioner in refusing a permit. In such situations the court properly recognized the discretionary power to grant variances under statutory and ordinance provisions similar to Sections 89.090, subd. 1(3), V.A.M.S., and 65.300.1(b) and (c), *supra.* An exception is *Conner v. Herd,* 452 S.W.2d 272 (Mo.App.1970), but the board of zoning adjustment there was acting under a specific section which empowered a variance unrelated to any conditional use. *Rosedale-Skinker Imp. Assn. v. Board of Adjustment,* 425 S.W.2d 929 (Mo. banc 1968), involved an appeal from the refusal of the building commissioner to issue a permit and the

board had the express power to order a variance in language following Section 89.-090, V.A.M.S., *supra. Summers v. Board of Zoning Adjustment,* 299 S.W.2d 883 (Mo. App.1957), involved the issuance by the board of a permit to use land owned by a church as a parking lot for churchgoers, and the ordinance provided that the board could exercise variance power with respect to off-street parking. In *Carlyle-Lowell, Inc. v. Ennis,* 330 S.W.2d 164 (Mo.App.1959), there was no question that the board was relying upon its appeal powers in treating an appeal from the refusal of the building commissioner to issue a permit, and the landowner was seeking to use the property "for the very purpose * * * for which it [was] already zoned."

Judgment affirmed.

All concur.