**John W. WOLFNER, Jr.,**
**Plaintiff-Appellant,**

v.

**BOARD OF ADJUSTMENT OF the**
**CITY OF FRONTENAC, Missouri,**
**Defendant-Respondent.**

No. 47199.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 9, 1984.

Byron E. Francis, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for plaintiff-appellant.

David D. Crane, St. Louis, George E. Helfers, Clayton, for defendant-respondent.

GAERTNER, Presiding Judge.

John W. Wolfner, Jr., appeals the decision of the City of Frontenac Board of Adjustment upholding the denial of a building permit for the construction of a residence on two lots in the West End Park Subdivision. A brief dissertation upon the history of the development of Block 32 of the subdivision is necessary to an understanding of the issues presented.

In 1890, prior to the incorporation of the City of Frontenac, a plat of the West End Park Subdivision was recorded in the office of the St. Louis County Recorder of Deeds. The subdivision consisted of a number of twenty-five feet by one hundred feet lots intended for use as suburban homes or summer cottages by residents of the City of St. Louis, commuting by train to downtown offices. We are concerned principally with lots three through ten of the thirty-two lots comprising Block 32 of the subdivision. In April 1979, Peter Hennessey, a real estate developer, purchased lots three, four, five, and six. At about the same time

he obtained an option to purchase lots seven, eight, nine, and ten. Pertinent portions of Frontenac City Ordinance 390, then in effect, provided for a minimum of 7,500 sq. ft. for a residential building site in this subdivision. An exception was provided by the ordinance for a single family residence on "a lot of record when the ordinance became effective." A "lot of record" is defined by the ordinance as "a lot which is a part of a subdivision, the map of which has been recorded in the office of the County Recorder of St. Louis County ...." The ordinance further defines the word "lot" as "land or a building site occupied or to be occupied by a building ..." which "shall conform in area to the minimum requirements ... with the exception that a lot of record, or two lots of record abutting each other, shall be considered a building site when no other lots adjacent thereto are available to establish a building site."

In 1979, Hennessey was granted a permit to construct a residence upon the 7,500 sq. ft. area of lots three, four, and five. The building occupies lots three and four, leaving lot five as a side yard. He then applied for two building permits, one on lots eight, nine, and ten and the other on lots six and seven. Both applications were denied by the City Building Commissioner (sometimes referred to in the record as the Manager of Buildings and Public Works). Hennessey appealed to the Frontenac Board of Adjustment. A hearing was held on January 30, 1980, after which the Board directed the Commissioner to issue a permit for lots eight, nine, and ten on condition that the eventual purchaser thereof be given an option to purchase lot seven for $5,000. This option was subsequently rejected by the purchaser.

On July 1, 1981, the Chairman of the Board of Adjustment wrote a letter to the Building Commissioner regarding the application for the building permit on lots six and seven. The letter refers to the hearing of January 30, 1980, relating to lots three through ten and the rejection of the option to purchase lot seven by the purchaser of lots eight, nine, and ten, and concludes:

The point is that there were opportunities for removing both lot 6 and lot 7 from the building market, but this was not done. The houses that have been built on those lots have definitely upgraded the neighborhood and broadened the tax base. Thus, a 'sub-standard' lot was not deliberately created but came into being by happenstance. It was the sentiment of this Board that if that happened unless in the meantime the Ordinance had been amended, a permit should be issued for a house on lots 6 and 7. As long as an Ordinance is still in effect stating that a permit can be issued on a 5,000 sq. ft. 'Land-Locked' building site and as stated above the 'Land-Locking' was not deliberate but dependant upon the decision of totally unrelated parties we felt that our letter of July 17, 1980, covered this contingency and authorized a building permit.

Subsequently, the Chairman wrote a letter to the City Attorney repeating the Board's position that a permit was to be issued for lots six and seven since the purchaser of lots eight, nine, and ten had rejected the option. This letter concludes:

Coupled with the fact that Hennessey Construction has recently been issued permits for building on 5,000 sq. ft. lots and has our blessing on lots six and seven we fail to see why a permit has not been issued. Our Board heard the matter and made a decision, there is no need for another; the ordinance is perfectly clear.

The exact dates are not clear from the record, but some time subsequent to the hearing of January 30, 1980, Hennessey permitted his option to purchase lot seven to lapse and Wolfner, appellant herein, purchased lot seven from its original owner and lot six from Hennessey. On November 18, 1981, Wolfner, through Hennessey as his agent, applied for the building permit on lots six and seven which the building commissioner denied because the lots did not meet the 7,500 sq. ft. minimum area requirement of Ordinance 390. Wolfner appealed to the Board of Adjustment which

conducted a hearing and affirmed the denial for two reasons:

It was the feeling of the Board that the intent of the ordinance was to give relief only to the *original* owners of lots containing less than the required area, when the ordinance was passed.

It was the further feeling of this Board that the granting of this request would be for the convenience of the applicant since hardship was not demonstrated.

Upon certiorari to the Circuit Court, the denial of Wolfner's application for a building permit was affirmed. On appeal to this court, Wolfner contends the decision of the Board of Adjustment was illegal in that he was entitled to the permit as his property falls within the "Land-Locked" exception of the ordinance and that the refusal of the Board to grant a variance was arbitrary, capricious, and contrary to the evidence.

■■ As stated in *Stockwell v. Board of Zoning Adjustment of Kansas City*, 434 S.W.2d 785, 789 (Mo.App.1968):

The scope of our review is well defined. First, we are to determine if the Board's action was legal in the sense of being authorized by law; and second, since a hearing was required, whether its decision was supported by competent and substantial evidence upon the whole record. Sec. 22, Art. 5, Constitution of Missouri, 1945, V.A.M.S.; *State ex rel. St. Louis Public Service Co. v. Public Service Commission*, Mo., 291 S.W.2d 95; *Dunbar v. Board of Zoning Adjustment*, Mo.App., 387 S.W.2d 164. Further, neither " * * * this court nor the Circuit Court may try the matter de novo or substitute our judgment for that of the administrative tribunal. If there was substantial credible evidence to support the finding and if the result reached could reasonably have been reached, we are without authority to disturb the finding unless it was clearly contrary to the overwhelming weight of the evidence." *Shiverdecker v. Zoning Board of Adjustment of Fulton*, Mo.App., 351 S.W.2d 43, 46.

■■ Wolfner's two-pronged attack upon the decision of the Board requires that we first note the distinction between an exception and a variance in zoning matters. An exception is written into the ordinance by the legislative body, rather than being granted or withheld at the discretion of the administrative board. It does not involve varying the ordinance but, rather, merely complying with its terms. *See* 3 Rathkopf, *The Law of Zoning and Planning*, § 41.05 at 41–20, 21 (4th ed. 1984). The granting of a variance, on the other hand, is an authorized act of discretion on the part of the administrative board where indicated by special circumstances which justify the alleviation of hardship. As succinctly noted in *One Hundred Two Glenstone, Inc. v. Board of Adjustment*, 572 S.W.2d 891, 894 (Mo.App.1978), an exception is legislatively permitted whereas a variance is legislatively prohibited, but may be allowed for special reasons. The issuance of a building permit is a ministerial act which the building commissioner may not legally refuse to perform if the requirements of the ordinance have been met. *State ex rel. Folkers v. Welsch*, 235 Mo. App. 15, 124 S.W.2d 636, 639 (1939). Thus, a building permit must be issued for any property which meets the conditions specified in an ordinance as constituting an exception. *See* 3 Rathkopf, *supra*.

■ The exception to the 7,500 sq. ft. minimum area requirement of Ordinance 390 is stated clearly and without ambiguity: "With the exception that a lot of record, or two lots of record abutting each other, shall be considered a building site when no other lots adjacent thereto are available to establish a building site." A lot of record is "a lot which is a part of a subdivision, the map of which has been recorded in the Office of the County Recorder of St. Louis County ...." Wolfner's property consists of two abutting lots which are a part of a subdivision, the map of which was recorded in 1890. In denying the application for a building permit for the stated reason "[i]t was the feeling of the Board that the intent of the ordinance was to give relief only to the *original* owners

of lots containing less than the required area when the ordinance was passed," the Board of Adjustment read into the ordinance a provision never enacted by the Frontenac Board of Aldermen. A Board of Adjustment is solely an administrative body "without a vestige of legislative power." *Conner v. Herd,* 452 S.W.2d 272, 276 (Mo.App.1970). Additionally, while the predecessor ordinance contained language which tends to support the intention expressed by the board, such language was eliminated from Ordinance 390. The deletion supports a conclusion that no such intention motivated the Board of Aldermen in the enactment of the later ordinance.[1]

It is a well recognized maxim of legislative construction that the action of a legislative body in amending, repealing, or re-enacting a statute or ordinance is presumed to have some substantive effect so that it will not be found to be a meaningless act of housekeeping. *City of Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441, 445 (Mo. banc 1980). In the light of this principle, we must conclude that the Frontenac Board of Aldermen, by eliminating from Ordinance 390 language applying the exception only to lots, the ownership of which had not changed hands after the passage of Ordinance 94, had no intention that the exception of the later ordinance would have any such limited application. The contrary argument made here by the Board of Adjustment, that the later ordinance must be interpreted in the light of the early ordinance, would require a conclusion that the Board of Aldermen indulged in useless pettifoggery by changing the language of the exception without changing its meaning and application. No assertion is made that the language of Ordinance 390 is vague or ambiguous in describing lots which are excepted from the minimum area requirements. We are as powerless as the Board of Adjustment to engraft qualifications upon the words adopted by the Frontenac Board of Aldermen which would alter the plain meaning of those words.

The language of Ordinance 390 provides that a lot fitting the description of the exception "shall be considered a building site." The mandatory "shall" leaves no room for the exercise of discretion by the Board of Adjustment. Its failure to comply with the mandate imposes upon the Court the duty to set aside its denial of the permit. *Waeckerle v. Board of Zoning Adjustment,* 525 S.W.2d 351, 358 (Mo.App. 1975).

Furthermore, whether Wolfner's application be considered as a request that he be granted a variance or that he come within the exception, the record demonstrates that the denial by the Board of Adjustment was arbitrary and capricious under the circumstances. Received in evidence was the letter of the Board of Adjustment dated July 24, 1981, and signed by its Chairman. The letter refers to "the fact that Hennessey Construction has recently been issued permits for building on 5,000 sq. ft. lots ...." A Board of Adjustment is not free to pick and choose between similarly situated applicants of whom they will or will not require strict compliance with the ordinance. *State ex rel. Nigro v. Kansas City,* 325 Mo. 95, 27 S.W.2d 1030, 1032 (Mo. banc 1930). In the absence of differing circumstances or changed conditions, and none are shown here, the board cannot issue a permit for a 5,000 sq. ft. building site as an exception or a variance to one applicant and deny it to another. *Bartholomew v. Board of Zoning Adjustment,* 307 S.W.2d 730, 732 (Mo. App.1957). Such discrimination runs afoul of the prohibition of arbitrary and capricious action by an administrative agency. § 536.140.1(6), RSMo 1978.

---

1. Frontenac Ordinance 94, enacted in 1954, and the predecessor to Ordinance 390, contained an exception to the 7,500 sq. ft. minimum area requirement expressed in the following terms:
   If a lot or tract of land has less area than herein required, and its boundary lines along their entire length touched lands under other ownership prior to the passage of this ordinance and have not since been changed, such lot or tract of land may be used for a single family dwelling.

The record discloses not only that the Hennessey Construction Company had been issued permits on other 5,000 sq. ft. lots, but also that Hennessey's application for a building permit on lots six and seven was approved by the Board of Adjustment after the January 30, 1980, hearing, provided the purchaser of lots eight, nine, and ten did not wish to purchase lot seven. When the purchaser rejected this option, the board by its chairman wrote on July 24, 1981, in regard to lots six and seven: "we fail to see why a permit has not been issued. Our board heard the matter and made a decision, there is no need for another [hearing]; the ordinance is perfectly clear." The evidence shows no changed conditions or altered circumstances between the date of this letter, or the letter of similar import dated July 1, 1981, and the date of Wolfner's application for a building permit, November 18, 1981. For the board to approve Hennessey's application, either as within the exception or as a request for a variance, but then to disapprove Wolfner's as a matter of "convenience for the applicant" can only be described as arbitrary and capricious.

Accordingly, the judgment of the Circuit Court of St. Louis County affirming the decision of the Frontenac Board of Adjustment is reversed. This cause is remanded to the Circuit Court with directions that it issue its order directing the Frontenac Board of Adjustment to issue a building permit to appellant for the construction of a one-family dwelling on lots six and seven of block 32 of the West End Park Subdivision.[2]

SMITH, J., and JEAN C. HAMILTON, Special Judge, concur.

---

**2.** The decision we have reached renders moot appellant's motion to strike respondent's addi-

tional record on appeal.