CITY OF SUGAR CREEK, Respondent,

v.

Edward B. REESE, Appellant.

No. WD 54938.

Missouri Court of Appeals,
Western District.

June 16, 1998.

James C. Bowers, C. Matt Swafford, Polsinelli, White, Vardeman & Shalton, Kansas City, for appellant.

Robert C. Welch, Welch, Martin, Albano & Manners, P.C., Independence, for respondent.

Before ULRICH, C.J., P.J., and BRECKENRIDGE and SMART, JJ.

ULRICH, Chief Judge, Presiding Judge.

Edward Reese appeals from the decision of the circuit court concluding that Mr. Reese does not have a constitutional right to alter the nonconforming use of his property located in Sugar Creek, Missouri ("the City") to another nonconforming use. Mr. Reese raises three issues on appeal. He argues that the circuit court erred by (1) finding that he did not have a vested right to alter the nonconforming use of his property to another nonconforming use; (2) finding that the restriction on his property did not constitute an unconstitutional taking; and (3) finding that the City's enforcement of the city zoning ordinances did not deprive Mr. Reese of

equal protection of the law. The judgment of the circuit court is affirmed.

## FACTS

Edward Reese, Jr. owns property located at 704 N. Sterling in Sugar Creek, Missouri as a tenant in common with his siblings. Mr. Reese's property ("the Property") is legally described as Lots 3, 4, 5 and 6 of Block C of the Sugar Creek Townsite. Mr. Reese's parents, Edward and Marjorie Reese, purchased Lots 3, 4 and 5 of the Property on April 13, 1953. The Reeses acquired Lot 6 in 1957.

The city of Sugar Creek ("City") passed zoning ordinance R–1280 on May 9, 1955, creating zoning areas of B (Business), C (Residential), and D (Recreational and Park Areas). The Property was zoned B (Business), allowing all types of businesses permitted by law. Mr. Reese leased the Property to Edward Redmon and Vernon Rivers in June, 1960 to operate "Able Manufacturing," a die-casting business. The City issued an occupational license to Able Manufacturing on February 11, 1964.

The City changed the zoning of the property from B (Business) to C–3 (Central Business) in 1966. Central Business zoning classification is more restrictive than the Business classification, but it includes all types of retail establishments. The City established an Industrial District to accommodate industrial uses of property, including manufacturing, processing and storing of goods and the extraction, processing, refining or storing of mineral or petroleum resources. As a result of the zoning change, the use of the Property as an industrial die-casting business became legally nonconforming because the Business use of the Property pre-dated the City's change in the zoning ordinance. Able Manufacturing lawfully continued to operate its die-casting business.

The City changed its zoning ordinance again on June 13, 1983, and, as a result, the Property was classified as District C–2B. Zoning district C–2B allows residential uses and less-intense commercial uses such as assembly halls, billiard hall, dance halls, gasoline service station, motels and hotels, night clubs, parking lots, taverns and theaters. The 1983 zoning ordinance provided that "a non-conforming use may be continued, but may not be changed to another non-conforming use." The 1983 zoning ordinance also provided that a legally nonconforming use could be continued indefinitely, but if "discontinued or abandoned for one hundred eighty (180) consecutive days, the land, building or structure, shall not thereafter be used except in conformance with the regulations and standards of the district in which it is located." Although Able Manufacturing's use of the Property as a die-casting business was not allowed in a C–2B district, Able Manufacturing continued to operate its die-casting business as a legal nonconforming use of the Property.

Able Manufacturing notified Mr. Reese by letter in August, 1992, of its intent to terminate its lease of the Property. Able Manufacturing vacated the Property effective September 20, 1992. Mr. Reese obtained an electrical permit from the City on November 10, 1992, and initiated repairs and improvements to the building on the Property. Mr. Reese wrote a letter to the Sugar Creek Planning and Zoning Commission on March 21, 1993, asking that the Property be rezoned from C–2B, Central Business, to M–1, Light Industrial to permit his utilizing the Property as a automotive sales and repair shop. The Commission determined at its April 8, 1993, meeting that the Property would need to be rezoned to accommodate Mr. Reese's proposed use of the Property.

City Building Official George Gardner sent a certified letter to Mr. Reese on May 1, 1995, citing him for a violation of the City's zoning ordinance for operation of an auto repair business in an area zoned C–2B. The City gave Mr. Reese ten days to remove inoperable cars from the Property.

Mr. Reese received a summons from the City on October 12, 1995, to appear before the City of Sugar Creek Municipal court to answer a charge of violating three City ordinances. The complaint cited a violation of the City zoning ordinance for operating an auto repair shop in a C–2B Central Business district; a violation of section ES–301.10.2 of the BOCS National Existing Structures Code "(BOCA Code)" for having more than two

unlicensed or uninspected vehicles on a non-residential property; and a violation of section 17–41 of the City code for engaging in a calling or trade without first procuring a license from the City. The Municipal Court found in favor of the City on April 9, 1996. Mr. Reese appealed the court's decision to the circuit court which affirmed the decision of the municipal court on August 20, 1997. This appeal followed.

## I. MR. REESE IS BOUND BY THE 1983 ORDINANCE PROVIDING THAT CHANGES IN NONCONFORMING USES ARE PROHIBITED

■ Mr. Reese argues as his first point on appeal, that the circuit court erred in determining he was bound by the 1983 zoning ordinance that prohibits changing one nonconforming use to another. Mr. Reese argues that the zoning ordinance in effect in 1955 and 1963, which did not prohibit changes in nonconforming uses, determines his use rights in the Property because the 1983 zoning ordinance may not be applied retrospectively to existing landowners. The City argues that Mr. Reese's right to use the Property as a legally nonconforming industrial use lapsed after the expiration of 180 days during which the legal nonconforming use was not implemented, and that, even if Mr. Reese's nonconforming use of the Property did not lapse, he was nonetheless bound by the 1983 zoning ordinance prohibiting changing one conforming use to another.

■ The term "nonconforming use" means a use of land that lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions. *Missouri Rock, Inc. v. Winholtz*, 614 S.W.2d 734, 739 (Mo.App.1981). A nonconforming use is a vested property right that may not be abrogated by a zoning ordinance. *Id.* Zoning ordinances must permit continuation of nonconforming uses in existence at the time of enactment to avoid violation of constitutional provisions preventing the taking of private property without compensation. *Id.*

■ Mr. Reese first argues that the 1983 zoning ordinance is ambiguous concerning the right to change from one nonconforming use to another nonconforming use and, thus, the ordinance should be construed liberally to allow changes between nonconforming uses. In *Huff v. Board of Adjus. of City of Independence*, 695 S.W.2d 166 (Mo.App. 1985), this court analyzed a zoning ordinance containing identical language to the one adopted by the City. In *Huff*, a doctor had for many years operated a "doctor's office" on his property. *Id.* at 167. The city of Independence enacted a zoning ordinance, zoning the property as R–4, high density residential. *Id.* The zoning ordinance also provided that a nonconforming use "may not be changed to another nonconforming use." *Id.* The doctor, however, continued to operate his doctor's office on the property as a lawful nonconforming use. *Id.* The doctor retired and sought to rent the property to an organization to serve as the distributing headquarters of food and money to the needy. *Id.* The city denied the change in zoning appeal. *Id.*

In appealing the city's denial of the zoning request, the doctor argued that the zoning ordinance was ambiguous and, hence, allowed changes between nonconforming uses. *Id.* The court noted that the cardinal rule for construing ordinances is to ascertain and give effect to the intent of the enacting legislative body, and, in so doing, to construe words of common usage in accordance with their natural and ordinary meaning. *Id.* at 168. In determining the legislative intent, courts consider that "the spirit of zoning ordinances always has been and still is to diminish and decrease nonconforming uses." *Id.* (quoting *Hoffmann v. Kinealy*, 389 S.W.2d 745, 750 (Mo. banc 1965)). Thus, courts have allowed municipalities to regulate and limit nonconforming uses by various means such as prohibiting the resumption of a nonconforming use after its abandonment or discontinuance, prohibiting the rebuilding or alteration of nonconforming structures or structures occupied for nonconforming uses and prohibiting or rigidly restricting a change from one nonconforming use to another. *Id.* Applying these general principles of law, the court determined that the city's ordinance prohibiting changes between nonconforming uses was valid. *Id.* It reasoned:

The words ... "may not be changed to another nonconforming use" are words of common usage, and, when afforded their "natural and ordinary meaning," say what they mean and mean what they say-a nonconforming use may not be changed to another nonconforming use. It is patent that under [the zoning ordinance] a change from one nonconforming use to another nonconforming use is absolutely prohibited as opposed to being merely restricted....[The ordinance] provides no leeway whatsoever for changing from one nonconforming use to another nonconforming use. Instead, it absolutely prohibits changing a nonconforming use to another nonconforming use.

*Id.*

Here, as in *Huff,* Mr. Reese is bound by the 1983 zoning ordinance prohibiting changes between nonconforming uses. The City's 1983 zoning ordinance employs identical language to the ordinance at issue in *Huff:* both provide that a nonconforming use may be continued but "may not be changed to another nonconforming use." As the court in *Huff* noted, the words "may not be changed to another nonconforming use" are words of plain meaning and have the effect of strictly prohibiting changes between nonconforming uses. Mr. Reese's argument that the City's 1983 zoning ordinance is ambiguous, therefore, fails.

Having determined the effect of the City's 1983 zoning ordinance, whether Mr. Reese is subject to the prohibition against changes between nonconforming use is determined. Mr. Reese argues that because he owned the Property before the 1983 zoning ordinance was enacted that his rights are governed by the zoning ordinances in place before 1983. The City argues, however, that Mr. Reese failed to preserve his right to continue the nonconforming use of the Property due to his failure to utilize the Property as Industrial for the 180 day period set forth in the zoning ordinance and that, even if Mr. Reese's right to utilize the Property as Industrial did not lapse, he is nonetheless bound by the 1983 zoning ordinance.

Whether Mr. Reese's right to use the property as a legally nonconforming industrial use lapsed, however, need not be determined because, in any event, Mr. Reese is bound by the 1983 zoning ordinance prohibiting changes in nonconforming uses. In *Huff,* the doctor, like Mr. Reese here, owned the property before the enactment of the zoning ordinance prohibiting changes in nonconforming uses. This court found that the doctor's property rights concerning changes between nonconforming uses were governed by the subsequently enacted zoning ordinance. Here, as in *Huff,* Mr. Reese's right to change the use of the Property between nonconforming uses is governed by the subsequently enacted 1983 zoning ordinance. While Mr. Reese owned the Property prior to the enactment of the zoning ordinance, as established in *Huff,* that fact is not dispositive of Mr. Reese's rights. Because the 1983 zoning ordinance governs only the right to change between nonconforming uses and does not affect the validity of an existing lawful nonconforming use, Mr. Reese is subject to the 1983 zoning ordinance even though it was enacted after he acquired ownership rights in the Property. Failure to apply this rule of law would unduly restrict a city's right to legally control the use of property within its limit and result in cities having virtually little or no control of the land. Because different ordinances would apply to different properties within the city, within the same locale one property owner could freely vacillate from one nonconforming use to another in perpetuity while an adjacent property owner could not practice even one nonconforming use. The result would negate the effect of the existing zoning ordinance; the city could virtually never acquire uniform application of its existing zoning ordinance to accomplish the city's plan, and the result would constitute inequitable restrictions on property owners' use of their property. The circuit court, thus, did not err in determining that Mr. Reese lacked a vested constitutional right to change the use of the Property from one nonconforming use to another nonconforming use. Point one is denied.

## II. THE CITY'S ZONING ORDINANCE DOES NOT CONSTITUTE AN UNCONSTITUTIONAL TAKING OF PRIVATE PROPERTY

As Mr. Reese's second point on appeal, he argues that the circuit court erred in

determining that the application of the City zoning ordinance did not constitute an unconstitutional taking of private property in violation of federal and Missouri Constitutions. Mr. Reese argues that the City's prohibition against changes between nonconforming uses constitutes an amortization in violation of his constitutional rights.

■ Property is defined as including not only ownership and possession but also the right of use and enjoyment for lawful purposes. *Id.* at 752. The constitutional guaranty of protection for private property applies equally to the enjoyment and possession of land. *Id.* at 753. Arbitrary interference by government with the reasonable enjoyment of private lands is a taking of private property without due process of law that is prohibited under the Constitution. *Id.*

■ Zoning ordinances bearing a substantial relationship to the public health, safety, morals or general welfare of the community constitute a legitimate exercise of the government's police power. *Hoffmann*, 389 S.W.2d at 748; *City of Kansas City v. Kindle*, 446 S.W.2d 807, 813 (Mo.1969). Zoning ordinances, however, may not abrogate vested property rights. *Id.* Thus, a comprehensive zoning ordinance must permit the continuation of nonconforming uses in existence at the time of the enactment of the ordinance in order to avoid violation of constitutional provisions. *Id.; State ex rel. Nealy v. Cole*, 442 S.W.2d 128, 131 (Mo.App.1969). Amortization statutes that contemplate the compulsory termination of a non-conformity at the expiration of a specified period of time equal to the useful economic life of the nonconformity are also prohibited as an unconstitutional taking of private property. *Hoffmann*, 389 S.W.2d at 751.

The 1983 zoning ordinance enacted by the City regulates changes between nonconforming uses. Lawful nonconforming uses existing at the time the zoning ordinance was passed are not abrogated by the 1983 zoning ordinance. The continued operation of Able Manufacturing as a lawful nonconforming use was, therefore, not abolished by the 1983 zoning ordinance. As established by *Huff*, however, the 1983 zoning ordinance did prevent Mr. Reese from changing from the lawful nonconforming use, the operation of the industrial die-casting business, to another nonconforming use. While Mr. Reese could have continued operating the Property as an industrial die-casting business after Able Manufacturing ended its lease of the Property, Mr. Reese was prevented from changing the use of the Property to another nonconforming use by the 1983 zoning ordinance.

That Mr. Reese was prevented by the zoning ordinance from changing the nonconforming use of the Property does not constitute amortization. Amortization contemplates the compulsory termination of *existing* property rights. While Mr. Reese had the legal right to utilize the Property as an industrial die casting business, Mr. Reese did not have an existing property right to use the Property as an auto repair shop. No amortization, therefore, occurred. Because no existing property right was affected by the City's enforcement of the zoning ordinance prohibiting a change in the exercise of nonconforming uses, no unconstitutional taking of private property occurred. The circuit court, therefore, did not err in determining that the City's enforcement of the zoning ordinance did not constitute an unconstitutional taking of private property. Point two is denied.

## III. THE CITY'S ENFORCEMENT OF THE ZONING ORDINANCE DID NOT DEPRIVE MR. REESE OF EQUAL PROTECTION OF THE LAW

■ As his final point on appeal, Mr. Reese argues that the circuit court erred in determining that the City's application of the 1983 zoning ordinance did not deprive him of equal protection of the law. Mr. Reese argues that the City selectively enforced the zoning ordinance against him because it failed to apply the zoning ordinance to an auto repair business located one block from the Property. Mr. Reese alleges the zoning violated the Equal Protection clause of the Fourteenth Amendment, U.S. Constitution, and the equal rights and opportunities clause of the Missouri Constitution (Article 1, Section 2). The Equal Protection clause prohibits the discriminatory application of land use

restrictions among similarly situated landowners. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In order to make a case for discriminatory enforcement, however, a plaintiff must show that he has been singled out and compelled to comply with law while others similarly situated have not been so compelled. *Gold Cross Ambulance v. City of Kansas City*, 538 F.Supp. 956, *affirmed* 705 F.2d 1005 (D.C.Mo.1983); *Wolfner v. Board of Adjustment*, 672 S.W.2d 147, 151 (Mo.App.1984).

Mr. Reese has failed to show that the City enforced the 1983 zoning ordinance in a discriminatory manner and, hence, his claim that the City's action deprived him of equal protection of the laws fails. Mr. Reese alleges that his equal protection rights were violated because the City failed to enforce the 1983 zoning ordinance against a similarly situated landowner, an auto repair business located one block from Mr. Reese's property. The auto repair business located one block from the Property, however, has been in existence continually since the early 1950s. Unlike the auto repair business proposed by Mr. Reese, the other auto repair business, therefore, constitutes a legal nonconforming use and, thus, is not in violation of the City's zoning ordinances. *Missouri Rock*, 614 S.W.2d at 739. Additionally, the evidence introduced by the City established that it has prosecuted other landowners besides Mr. Reese for violations of the 1983 zoning ordinance. Because the City has enforced the 1983 zoning ordinance against other similarly situated landowners and because the other auto repair business was not similarly situated with Mr. Reese's proposed business, Mr. Reese has failed to state a case for discriminatory enforcement of the zoning ordinance. *Wolfner*, 672 S.W.2d at 151. The circuit court, therefore, did not err in determining that Mr. Reese was not deprived of equal protection of the law. Point three is denied.

The judgment of the circuit court is affirmed.

All concur.